UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-233 (EGS) |
| | : | |
| WILLIAM ROBERT NORWOOD, III | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION TO REVOKE DEFENDANT'S PRETRIAL RELEASE**

On January 5, 2022, Pretrial Services filed a report alleging that defendant William Robert Norwood, III had violated his conditions of release by contacting his estranged wife, who is a potential witness in the investigation and prosecution. ECF No. 29. The government joins Pretrial Services in respectfully requesting that this Court revoke the defendant's pretrial release based on these violations.

The content of the defendant's text messages with his estranged wife, appended as attachments to Pretrial's Violation Report, show what appears to be a sustained campaign by the defendant to coerce, intimidate, threaten, and corruptly persuade a potential government witness to recant her statements to law enforcement and to obstruct justice. Communications between the estranged wife and defense counsel, which are also appended as attachments to Pretrial's Violation Report, provide context for the text messages between the defendant and his estranged wife: "Robert Norwood has been trying to [coerce] me into emailing you, stating that, anything from my statements to the FBI were not true. However, I do not feel comfortable lying [sic] about anything. . . . I do not feel comfortable in anything that he was telling me to do."

The government has from the beginning of this case harbored concerns about the safety of this potential witness given her role in the investigation and prosecution of this case. For example,

1

in responding to the defendant's April 14, 2021 Motion for Bond, the government requested that the Court specifically identify the defendant's estranged wife as one of the individuals whom the defendant is prohibited from contacting. *See* ECF No.14 at 4, 9; ECF No. 16 ¶ 7(g).

The defendant's clear violation of his unambiguous no-contact condition demonstrates his unwillingness to abide by this Court's order and his disregard for this Court's authority and the rule of law more broadly. The nature of the defendant's violations—contacting a potential government witness and pressuring her to recant her statements to the FBI and/or lie—also underscore the threat that the defendant poses to his estranged wife and to the integrity of the investigation and prosecution of this case. The defendant should be detained pending trial.

## **BACKGROUND**

The defendant entered the Senate Wing door of the U.S. Capitol Building on January 6, 2021 at approximately 2:23 p.m. – just ten minutes after rioters violently shattered the windows next to the door with stolen police riot shields and weapons. After entering the Senate Wing door, the defendant walked south and briefly entered an office across the hall from the Old Supreme Court Chamber. The defendant recorded a video of himself entering this office.



In this video, the defendant can be heard shouting: "Well we're in this bitch now.  What now!  This is our house . . .   Where you at, Nancy?"

Minutes later, the defendant led a pack of rioters through Speaker Nancy Pelosi's office suite.



3

As the defendant walked through the Speaker's office suite, he stole a paper coaster with the Congressional seal printed on it. The coaster was tossed to the defendant by another rioter who was rifling through one of the desks inside Speaker Pelosi's hallway.





The defendant then walked to the balcony outside the Speaker's chamber. There, he recorded two videos of the crowd gathered outside on the west front of the U.S. Capitol Building.

In one of those videos, the defendant can be heard shouting, "It's our house bitches." In the second video, the defendant can be heard shouting, "The soldiers' house! Go home police! Bye you bitches."



After leaving the Speaker's balcony, the defendant entered one of Speaker Pelosi's offices for approximately 25 seconds. He then walked back through the Speaker's wing, where he witnessed another rioter destroying a wooden "Speaker of the House Nancy Pelosi" sign over the archway.

The defendant eventually left the Speaker's wing and walked through the Rotunda and toward the East Rotunda doors. The East Rotunda doors were being guarded from the inside by at least three U.S. Capitol Police ("USCP") officers, including one officer clad in black riot gear. Norwood went to the front of the line of rioters gathered at the East Rotunda doors and began banging on the doors. Norwood, together with the rioters behind him, eventually pushed open the doors, which allowed hundreds of rioters to stream into the U.S. Capitol Building from the outside.



After breaching the East Rotunda doors, the defendant continued wandering through the Capitol Building. He recorded a one-minute video of uniformed Metropolitan Police Department officers stationed inside the Rotunda. In this video, the defendant can be heard saying, "Oh these assholes, trying to push us out . . . Should we take our house back? Our house. Y'all are a bunch of pussies. It's about to go down bro." The defendant then turned the camera on himself and said, "It's about to go down. Cause I'm gonna go [unintelligible] guns or their asps and attack these motherf***ers later. No f***ing around, no no."



The defendant eventually exited the U.S. Capitol Building through the East Rotunda doors at approximately 2:59 p.m. After exiting the building, the defendant stole a USCP helmet and plate carrier from a bin outside the building. Law enforcement recovered these stolen USCP items from the defendant's trailer in South Carolina at the time of his arrest.





The defendant was charged by criminal complaint on February 25, 2021, with Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Theft of Government Property, specifically, a United States Capitol Police ("USCP") body armor vest and helmet, in violation of 18 U.S.C. § 641; Knowingly Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) and (2); and Violent Entry and

Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) and (G).  *See* ECF No. 1.  As set forth in the Statement of Facts, the defendant texted family members boastful messages following the January 6 riot, including "It worked . . . I got away with things that others were shot or arrested for," "I fought 4 cops, they did nothing.  When I put my red hat on, they pepper balled me," and "I got a nice helmet and body armor off a cop for God's sake and I disarmed him."  ECF No. 1-1, at 2-3.

The defendant was arrested on February 25, 2021 and had his initial appearance in the District of South Carolina on February 26, 2021.  *See* ECF No. 5, *United States v. William Robert Norwood III*, 21-cr-58-JDA (D.S.C. Feb. 26, 2021).  A preliminary hearing and detention hearing were held in the District of South Carolina on March 2, 2021.  During that hearing, the defendant testified under oath regarding his actions on January 6, 2021.  *See* ECF No. 14-1.  After hearing testimony and argument, the Magistrate Judge in the District of South Carolina ordered the defendant detained based on his danger to the community.  *See* ECF No. 15.

On March 19, 2021, a federal grand jury returned a seven-count indictment charging defendant with the aforementioned offenses, as well as Entering and Remaining in Certain Rooms in the Capitol Building -- namely, an office belonging to Speaker Nancy Pelosi -- in violation of 40 U.S.C. § 5104(e)(2)(C).  ECF No. 8.

On April 14, 2021, defendant filed a bond motion.  *See* ECF No. 13.  The government filed its response to the bond motion on April 17, 2021.  ECF No. 14.  In its response, the government noted that the defendant was eligible for pretrial detention based on his flight risk and the risk that he would obstruct or attempt to obstruct justice, *see* 18 U.S.C. § 3142(f)(2), but ultimately concluded that such risks could be mitigated by stringent conditions of release, including location monitoring and home detention.  ECF No. 14, at 3-4.  The government also

requested that the Court specify in its bond conditions that the defendant be prohibited from contacting his estranged wife. *Id.* at 4.

At the bond hearing, the Court noted that the government would have had a colorable argument for pretrial detention in this case. Nevertheless, considering the parties' agreement on bond, the Court granted the defendant's release on April 20, 2021, and imposed the government's proposed release conditions, including a condition specifically prohibiting the defendant from having any contact, directly or indirectly, with his estranged wife. ECF No. 16. The defendant's bond conditions also advise him that "It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation, tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court." *Id.* at 3.

On July 28, 2021, the grand jury returned a superseding indictment reducing Count Two – Theft of Government Property, in violation of 18 U.S.C. § 641 – from a felony to a misdemeanor based on a revised valuation of the USCP property stolen by the defendant. ECF No. 20.

## ARGUMENT

### I. Applicable Authority

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Specifically, "[t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds that there is (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence

that the person has violated any other condition of release . . . [and that] based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or . . . the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

### II. There Are No conditions of Release That Will Mitigate Norwood's Danger to the Safety of His Estranged Wife

Now that the defendant's estranged wife has come forward with evidence of his pretrial violations, she is at even greater risk than when the government first requested a no-contact condition for her protection and for the integrity of this prosecution. The estranged wife has previously provided information to the FBI in connection with the investigation and arrest in this case. The estranged wife's communications with Norwood and with Norwood's counsel show that the defendant has, at the very least, been pressuring his estranged wife to recant her statements to the FBI, to not be truthful, and to "keep [her] mouth shut." ECF No. 29, Att. 3. In fact, when the estranged wife texted the defendant, "I will tell the whole truth," the defendant responded, "No you won't . . . You'll tell them you reached out to me and made the offer. That I didn't respond to you . . . Do not throw me under the bus . . . What part of spousal privilege don't you get???" *Id.* Additionally, when the estranged wife texted the defendant, "I refuse to write another bogus f***ing email," the defendant responded, "It's not bogus, and it will help us both. . . . Do what you said you already did. You lied to me. STUP F***ING LYING ABOUT EVERYTHING AND HELP ME LIKE YOU SAID YOU WOULD." *Id.* Att. 2.

The estranged wife's communications with defense counsel further underscore the pressure that she alleges she experienced from Norwood to lie. As the estranged wife wrote in an email to defense counsel, "Robert Norwood has been trying to [coerce] me into emailing you, stating that,

10

anything thing [*sic*] from my statements to the FBI were not true. However, I do not feel comfortable [lying] about anything. . . . I do not feel comfortable in anything that he was telling me to do."

At a minimum, these text messages and e-mail suggest that the defendant has been attempting to obstruct justice and tamper with witness testimony. There is no condition that can effectively mitigate the risk that the defendant poses to his estranged wife and, ultimately, to the integrity of this prosecution, given the many means of communication available to the defendant to contact his estranged wife or any other potential witnesses and co-conspirators in this case.

### III.   Norwood is Unlikely to Abide by Any Condition or Combination of Conditions of Release

The defendant has been in violation of his conditions of release for several months. Moreover, the defendant's text messages with his estranged wife show that he not only lacks regard for this Court's orders, but he also lacks regard for the rule of law and for this Court's specific advisements about witness tampering, intimidation, and retaliation.

The defendant's unwillingness to comply with Court orders and his disregard for the rule of law comes as no surprise given the defendant's history of lying to FBI agents in this case. As discussed in the government's response to the defendant's April 14 bond motion, during a non-custodial voluntary interview on January 22, 2021, the defendant lied to FBI agents when he told them that he left the stolen USCP vest and helmet inside a hotel room before leaving Washington, D.C. *See* ECF No. 14, at 3; ECF No. 14-1, at 106 ("AUSA: You told [FBI agents] that you left the stolen material in the hotel room in Washington; is that correct?" Norwood: That's what I said, yes, sir. AUSA: And that wasn't true? Norwood: Not at all."). In fact, the defendant brought the stolen USCP items back home with him to South Carolina and hid them in his trailer, where they were recovered by FBI officials upon execution of a search warrant. The defendant also lied to

11

family members, as evidenced by his text messages following the riot in which he bragged about beating up law enforcement officers and disarming them. Indeed, the defendant recently participated in a voluntary interview with a local news network, in which he confirmed to the reporter that he was just joking in those messages, even though there was no indication of sarcasm or humor in those text messages.[1]

This Court's orders could not have been clearer, and there is no possible excuse for the defendant's violations. The defendant has shown, time and again, beginning with his entry into the restricted Capitol Building on January 6, 2021, that he will not respect orders from law enforcement or any other authority, and that he cannot be trusted to abide by this Court's orders. The defendant cannot be trusted to abide by any additional conditions imposed by this Court.

### IV. If Norwood Remains on Release, His Conditions Must Include Search Conditions for His Digital Devices.

The government believes that the defendant poses a danger to his estranged wife and has shown that he cannot abide by conditions of release. If, however, the Court gives Norwood the opportunity to remain on release, at a minimum, that release should be under stricter conditions. Specifically, the government proposes that this Court order the defendant to submit all of his computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, in his home or used by those family members residing with him, to a search. A pretrial services officer may conduct a search pursuant to this condition when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner.

---

[1] *See* Renee Wunderlich, "SC Man Facing Charges for Jan. 6 Says 'It Was a Mistake to Go,'" (Jan. 7, 2022), *available at* https://www.wyff4.com/article/sc-man-facing-charges-for-jan-6-says-it-was-a-mistake-to-go/38688716# (last accessed Jan. 13, 2022).

While this search condition would not prevent the defendant from contacting potential witnesses or co-conspirators, it would hopefully deter the defendant from doing so, and would enable Pretrial Services to better supervise the defendant's compliance (or non-compliance) with his no-contact condition.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ *Hava Arin Levenson Mirell*
Hava Arin Levenson Mirell
Assistant United States Attorney
Capitol Riot Detailee
CA Bar No. 311098
United States Attorney's Office
312 N. Spring St., Suite 1100
Los Angeles, CA 90012
Phone: (213) 894-0717
Hava.Mirell@usdoj.gov