UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-233 (EGS) |
| | : | |
| WILLIAM ROBERT NORWOOD III, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO REVOKE DEFENDANT <u>WILLIAM ROBERT NORWOOD III'S PRETRIAL RELEASE</u>

On January 13, 2022, the Government filed a Motion to Revoke Defendant William Robert Norwood III's Pretrial Release (hereinafter, "Revocation Motion"). (ECF No. 30). During a January 13 status conference, the Court ordered the defendant to file a response to the Government's Revocation Motion by February 2, 2022. On February 2, 2022, the defendant filed a Joint Motion to Amend Briefing Schedule and to Continue Status Conference. (ECF No. 31). As set forth in the defendant's Motion to Amend Briefing Schedule, after the filing of the Revocation Motion, the Government obtained additional evidence regarding the defendant's alleged violations of his conditions of pretrial release. This new evidence consists of text message conversations between the defendant and his estranged wife, which were obtained with the consent of the estranged wife. The purpose of this Supplemental Memorandum is to provide the Court with a fuller understanding of the defendant's violations based on this new evidence.

Between July 11, 2021, and January 6, 2022, the defendant exchanged approximately 7,378 text messages with his estranged wife. Approximately 74% of those messages were sent by the defendant. Norwood's messages to his estranged wife are harassing, abusive, petulant, and occasionally threatening. Exhibit 1, for example, contains twenty pages' worth of messages

1

exchanged between Norwood and his estranged wife from October 3 to October 5, 2021. In those messages, Norwood repeatedly threatens to reveal damaging information about his estranged wife if she contacts the authorities about his violative conduct:

> YOU will go to jail if you involve anyone else. I'm not kidding. I promise you have no idea what you're doing and clearly no idea what I have. This is why you should stop being a cruel heartless b[****] and listen to me. (Exh. 1, at 8).
>
> I may go to jail for a violation, but you'll go to jail for a felony. I guarantee that. I spoke to an attorney today. It's all being handled. I made sure you wouldn't get in trouble, but I'll undo that s[***] if you involve the law and get me in trouble. I am not kidding. You have no idea what I have. (*Id.* at 20).

Many of the messages between Norwood and his estranged wife pertain to marital issues, such as the return of Norwood's property or the payment of bills. But even in those conversations, the estranged wife routinely asks Norwood to stop contacting her, reminds Norwood of his no-contact order, and insists that all communications go through an attorney. For example, on September 7, 2021, the estranged wife texted Norwood: "Please stop contacting me and stalking my social media accounts . . . You have a no contact order issued from the US DISTRICT ATTORNEY GENERALS OFFICE! Please leave me alone!" On September 10, 2021, in response to a barrage of phone calls and text messages from Norwood, the estranged wife tells Norwood that she is "going to my attorneys office Monday" and "It's best to let the attorneys deal with the situation." *See* Exhibit 2, at 3, 8. On October 4, 2021, the estranged wife told Norwood, "Don't contact me again without an attorney." *See* Exhibit 1, at 11. On October 5, 2021, the estranged wife texted Norwood, "I'm blocking you. Please have an attorney contact me pertaining to any belongings. I am not your personal storage facility. It has to go. I'll be at [address] at 10am if you need to have anything discussed pertaining [to] the no contact order of your bond conditions." *Id.* at 18. On October 9, 2021, the estranged wife told Norwood, "Get an attorney to call me." On October 17, 2021, the estranged wife sent three messages to Norwood instructing

him to have his attorney contact her to arrange for the retrieval of his possessions from her residence. In sum, without wading into marital issues that are beyond the purview of this case, it is clear from the text messages that Norwood's communications with his estranged wife were often unprovoked and unwelcome.

In addition to these harassing, manipulative, and emotionally abusive messages, the defendant also exchanged several messages with his estranged wife to pressure her to invoke her spousal privilege at trial. For example, on October 23, 2021, Norwood instructed his estranged wife that, in speaking with the FBI, she should "[j]ust say that you will not agree to take the stand against your husband and you don't think I deserve what they're doing to me." He also told her that the "prosecution will tear you apart if you take the stand. They'll also ask you to be in DC for the trial. They can't make you as long as we're married." Seconds later, Norwood texted his estranged wife, "So . . . I'm not giving you a divorce ho." The estranged wife responded, "I'll make a deal with you. We can stay married until after the trial," to which Norwood replied, "DEAL."

Later that day, Norwood orchestrated a plan to have his estranged wife send him an email. In that email, the estranged wife would ask Norwood to put her in touch with his attorney. Norwood would then forward his attorney the email to make it look as though he had received an unsolicited communication from his estranged wife. At that point, Norwood would ask his attorney to contact his estranged wife so that the estranged wife could tell the attorney that she wanted to invoke her spousal privilege. At 4:26 p.m. EST, the estranged wife sent Norwood the following email:

> Robert,
>      I need you to have your criminal attorney contact me. I am your wife. Give Peter Cooper full permissions to contact me so I am able to get a few issues addressed and better understand the current situation.

3

At around the same time, the following messages were being exchanged between Norwood and his estranged wife (Norwood's messages are in blue):



These messages show that the defendant has been violating his no-contact condition in an effort to impair the integrity of the Government's evidence at trial. Such conduct should not be tolerated by this Court.

Finally, the text messages show that the defendant has knowingly deceived this Court and its Pretrial Services Office. On September 30, 2021, Norwood sought special authorization from this Court to attend a concert at his church on October 7, 2021. (ECF No. 25). Norwood represented to the Court that he believed the event would be "an enlightening spiritual event in the further practice of his religion." (*Id.* ¶ 2). What Norwood failed to mention, however, is that he had also invited his estranged wife to attend the concert as his guest. On September 28, 2021, the defendant texted his estranged wife: "I'm having my lawyer get me permission to see David Phelps . . . Wanna go?" Norwood's estranged wife responded: "No." In addition, the defendant has taken advantage of the leniency afforded him by this Court. On April 20, 2021, the defendant was given special permission from this Court to go to a gym, notwithstanding his home detention condition. (ECF No. 16). It appears from the text message conversations, however, that the defendant used this gym time to meet in person with his estranged wife.

The defendant has also acted duplicitously toward his Pretrial Services Officer. On January 4, 2022, during a home visit with his Pretrial Services Officer, Norwood pretended to use the bathroom, when in fact he left the room to text his estranged wife:

> Hey my PO is here on his last stop talking to me about my s[***]. I can't let him see me talking to you. Don't call. He had just showed up when you called. I did my drug test and now I'm pretending to use the bathroom. I'll text you in a bit.

Later, presumably after the Probation Officer left Norwood's residence, the defendant texted his estranged wife: "Jeez . . . my PO is pretty cool. I wish he was cooler but . . . oh well."

Even if this Court were to allow the defendant to remain on pretrial release, he should no longer remain under his mother's supervision. The text messages show that Norwood's mother failed to take corrective action when she learned of Norwood's violative conduct. For example, on September 11, 2021, the estranged wife texted Norwood's mother:

> Your son has broken his emergency restraining order along with his no contact order. I can't get it through his head to leave me alone. The next step is to get in contact with the judges that has issued the order. Please let him know I have contacted you and this is very serious. I wish him the best but this has to end.

Again, on October 1, 2021, the estranged wife texted Norwood's mother: "Please have your son stop. This is 3 weeks in a row I've been asking him to stop. I'm going to have to say something to the judge. He won't stop." In sum, the defendant's mother can no longer be trusted to supervise the defendant if he is allowed to remain on home detention.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   /s/ *Hava Arin Levenson Mirell*
        Hava Arin Levenson Mirell
        Assistant United States Attorney
        Capitol Riot Detailee
        CA Bar No. 311098
        United States Attorney's Office
        312 N. Spring St., Suite 1100
        Los Angeles, CA 90012
        Phone: (213) 894-0717
        Hava.Mirell@usdoj.gov