AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| **WILLIAM NORWOOD III** | ) | Case No.   CR 21-233-01 (EGS) |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   WILLIAM NORWOOD III                                              ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment          ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☐ Complaint
☐ Probation Violation Petition          ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☑ Order of the Court

This offense is briefly described as follows:

Having contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or
prosecution, including but not limited to co-conspirator, defendant's estranged wife:

Date:   03/10/2022                                    _____
                                                      *Issuing officer's signature*

City and state:   WASHINGTON DC                       MARK COATES -DEPUTY CLERK
                                                      *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* **03/10/2022** , and the person was arrested on *(date)* **03/11/2022** at *(city and state)* **DUNCAN, SC** . |
| Date:   **03/11/2022**                           _____ FOR DUSM DAVID CRAWFORD<br>                                                 *Arresting officer's signature*<br>                                          PATRICK CAMPBELL    SDUSM<br>                                                 *Printed name and title* |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-233 (EGS) |
| | : | |
| WILLIAM ROBERT NORWOOD, III | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION TO REVOKE DEFENDANT'S PRETRIAL RELEASE**

On January 5, 2022, Pretrial Services filed a report alleging that defendant William Robert Norwood, III had violated his conditions of release by contacting his estranged wife, who is a potential witness in the investigation and prosecution. ECF No. 29. The government joins Pretrial Services in respectfully requesting that this Court revoke the defendant's pretrial release based on these violations.

The content of the defendant's text messages with his estranged wife, appended as attachments to Pretrial's Violation Report, show what appears to be a sustained campaign by the defendant to coerce, intimidate, threaten, and corruptly persuade a potential government witness to recant her statements to law enforcement and to obstruct justice. Communications between the estranged wife and defense counsel, which are also appended as attachments to Pretrial's Violation Report, provide context for the text messages between the defendant and his estranged wife: "Robert Norwood has been trying to [coerce] me into emailing you, stating that, anything from my statements to the FBI were not true. However, I do not feel comfortable lying [*sic*] about anything. . . . I do not feel comfortable in anything that he was telling me to do."

The government has from the beginning of this case harbored concerns about the safety of this potential witness given her role in the investigation and prosecution of this case. For example,

in responding to the defendant's April 14, 2021 Motion for Bond, the government requested that the Court specifically identify the defendant's estranged wife as one of the individuals whom the defendant is prohibited from contacting.  *See* ECF No.14 at 4, 9; ECF No. 16 ¶ 7(g).

The defendant's clear violation of his unambiguous no-contact condition demonstrates his unwillingness to abide by this Court's order and his disregard for this Court's authority and the rule of law more broadly.  The nature of the defendant's violations—contacting a potential government witness and pressuring her to recant her statements to the FBI and/or lie—also underscore the threat that the defendant poses to his estranged wife and to the integrity of the investigation and prosecution of this case.  The defendant should be detained pending trial.

## BACKGROUND

The defendant entered the Senate Wing door of the U.S. Capitol Building on January 6, 2021 at approximately 2:23 p.m. – just ten minutes after rioters violently shattered the windows next to the door with stolen police riot shields and weapons.  After entering the Senate Wing door, the defendant walked south and briefly entered an office across the hall from the Old Supreme Court Chamber.  The defendant recorded a video of himself entering this office.



In this video, the defendant can be heard shouting: "Well we're in this bitch now.  What now!  This is our house . . .   Where you at, Nancy?"

Minutes later, the defendant led a pack of rioters through Speaker Nancy Pelosi's office suite.



As the defendant walked through the Speaker's office suite, he stole a paper coaster with the Congressional seal printed on it. The coaster was tossed to the defendant by another rioter who was rifling through one of the desks inside Speaker Pelosi's hallway.





The defendant then walked to the balcony outside the Speaker's chamber. There, he recorded two videos of the crowd gathered outside on the west front of the U.S. Capitol Building.

In one of those videos, the defendant can be heard shouting, "It's our house bitches."  In the second video, the defendant can be heard shouting, "The soldiers' house!  Go home police!  Bye you bitches."



After leaving the Speaker's balcony, the defendant entered one of Speaker Pelosi's offices for approximately 25 seconds.  He then walked back through the Speaker's wing, where he witnessed another rioter destroying a wooden "Speaker of the House Nancy Pelosi" sign over the archway.

The defendant eventually left the Speaker's wing and walked through the Rotunda and toward the East Rotunda doors.  The East Rotunda doors were being guarded from the inside by at least three U.S. Capitol Police ("USCP") officers, including one officer clad in black riot gear. Norwood went to the front of the line of rioters gathered at the East Rotunda doors and began banging on the doors.  Norwood, together with the rioters behind him, eventually pushed open the doors, which allowed hundreds of rioters to stream into the U.S. Capitol Building from the outside.



After breaching the East Rotunda doors, the defendant continued wandering through the Capitol Building. He recorded a one-minute video of uniformed Metropolitan Police Department officers stationed inside the Rotunda. In this video, the defendant can be heard saying, "Oh these assholes, trying to push us out . . . Should we take our house back? Our house. Y'all are a bunch of pussies. It's about to go down bro." The defendant then turned the camera on himself and said, "It's about to go down. Cause I'm gonna go [unintelligible] guns or their asps and attack these motherf***ers later. No f***ing around, no no."



The defendant eventually exited the U.S. Capitol Building through the East Rotunda doors at approximately 2:59 p.m.  After exiting the building, the defendant stole a USCP helmet and plate carrier from a bin outside the building.  Law enforcement recovered these stolen USCP items from the defendant's trailer in South Carolina at the time of his arrest.





The defendant was charged by criminal complaint on February 25, 2021, with Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Theft of Government Property, specifically, a United States Capitol Police ("USCP") body armor vest and helmet, in violation of 18 U.S.C. § 641; Knowingly Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) and (2); and Violent Entry and

Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) and (G).  *See* ECF No. 1.  As set forth in the Statement of Facts, the defendant texted family members boastful messages following the January 6 riot, including "It worked . . . I got away with things that others were shot or arrested for," "I fought 4 cops, they did nothing.  When I put my red hat on, they pepper balled me," and "I got a nice helmet and body armor off a cop for God's sake and I disarmed him."  ECF No. 1-1, at 2-3.

The defendant was arrested on February 25, 2021 and had his initial appearance in the District of South Carolina on February 26, 2021.  *See* ECF No. 5, *United States v. William Robert Norwood III*, 21-cr-58-JDA (D.S.C. Feb. 26, 2021).  A preliminary hearing and detention hearing were held in the District of South Carolina on March 2, 2021.  During that hearing, the defendant testified under oath regarding his actions on January 6, 2021.  *See* ECF No. 14-1. After hearing testimony and argument, the Magistrate Judge in the District of South Carolina ordered the defendant detained based on his danger to the community.  *See* ECF No. 15.

On March 19, 2021, a federal grand jury returned a seven-count indictment charging defendant with the aforementioned offenses, as well as Entering and Remaining in Certain Rooms in the Capitol Building -- namely, an office belonging to Speaker Nancy Pelosi -- in violation of 40 U.S.C. § 5104(e)(2)(C).  ECF No. 8.

On April 14, 2021, defendant filed a bond motion.  *See* ECF No. 13.  The government filed its response to the bond motion on April 17, 2021.  ECF No. 14.  In its response, the government noted that the defendant was eligible for pretrial detention based on his flight risk and the risk that he would obstruct or attempt to obstruct justice, *see* 18 U.S.C. § 3142(f)(2), but ultimately concluded that such risks could be mitigated by stringent conditions of release, including location monitoring and home detention.  ECF No. 14, at 3-4.  The government also

requested that the Court specify in its bond conditions that the defendant be prohibited from contacting his estranged wife. *Id.* at 4.

At the bond hearing, the Court noted that the government would have had a colorable argument for pretrial detention in this case. Nevertheless, considering the parties' agreement on bond, the Court granted the defendant's release on April 20, 2021, and imposed the government's proposed release conditions, including a condition specifically prohibiting the defendant from having any contact, directly or indirectly, with his estranged wife. ECF No. 16. The defendant's bond conditions also advise him that "It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation, tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court." *Id.* at 3.

On July 28, 2021, the grand jury returned a superseding indictment reducing Count Two – Theft of Government Property, in violation of 18 U.S.C. § 641 – from a felony to a misdemeanor based on a revised valuation of the USCP property stolen by the defendant. ECF No. 20.

## **ARGUMENT**

### I.    **Applicable Authority**

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Specifically, "[t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds that there is (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence

that the person has violated any other condition of release . . . [and that] based on the factors set

forth in section 3142(g) of this title, there is no condition or combination of conditions of release

that will assure that the person will not flee or pose a danger to the safety of any other person or

the community; or . . . the person is unlikely to abide by any condition or combination of conditions

of release."  18 U.S.C. § 3148(b).

## II.    There Are No conditions of Release That Will Mitigate Norwood's Danger to the Safety of His Estranged Wife

Now that the defendant's estranged wife has come forward with evidence of his pretrial

violations, she is at even greater risk than when the government first requested a no-contact

condition for her protection and for the integrity of this prosecution.  The estranged wife has

previously provided information to the FBI in connection with the investigation and arrest in this

case.  The estranged wife's communications with Norwood and with Norwood's counsel show

that the defendant has, at the very least, been pressuring his estranged wife to recant her statements

to the FBI, to not be truthful, and to "keep [her] mouth shut."  ECF No. 29, Att. 3.  In fact, when

the estranged wife texted the defendant, "I will tell the whole truth," the defendant responded, "No

you won't . . . You'll tell them you reached out to me and made the offer.  That I didn't respond

to you . . . Do not throw me under the bus . . . What part of spousal privilege don't you get???"  *Id.*

Additionally, when the estranged wife texted the defendant, "I refuse to write another bogus

f***ing email," the defendant responded, "It's not bogus, and it will help us both. . . . Do what you

said you already did. You lied to me.  STUP F***ING LYING ABOUT EVERYTHING AND

HELP ME LIKE YOU SAID YOU WOULD."  *Id.* Att. 2.

The estranged wife's communications with defense counsel further underscore the pressure

that she alleges she experienced from Norwood to lie.  As the estranged wife wrote in an email to

defense counsel, "Robert Norwood has been trying to [coerce] me into emailing you, stating that,

anything thing [*sic*] from my statements to the FBI were not true.  However, I do not feel comfortable [lying] about anything. . . . I do not feel comfortable in anything that he was telling me to do."

At a minimum, these text messages and e-mail suggest that the defendant has been attempting to obstruct justice and tamper with witness testimony.  There is no condition that can effectively mitigate the risk that the defendant poses to his estranged wife and, ultimately, to the integrity of this prosecution, given the many means of communication available to the defendant to contact his estranged wife or any other potential witnesses and co-conspirators in this case.

### III.    Norwood is Unlikely to Abide by Any Condition or Combination of Conditions of Release

The defendant has been in violation of his conditions of release for several months.  Moreover, the defendant's text messages with his estranged wife show that he not only lacks regard for this Court's orders, but he also lacks regard for the rule of law and for this Court's specific advisements about witness tampering, intimidation, and retaliation.

The defendant's unwillingness to comply with Court orders and his disregard for the rule of law comes as no surprise given the defendant's history of lying to FBI agents in this case.  As discussed in the government's response to the defendant's April 14 bond motion, during a non-custodial voluntary interview on January 22, 2021, the defendant lied to FBI agents when he told them that he left the stolen USCP vest and helmet inside a hotel room before leaving Washington, D.C.  *See* ECF No. 14, at 3; ECF No. 14-1, at 106 ("AUSA: You told [FBI agents] that you left the stolen material in the hotel room in Washington; is that correct?"  Norwood: That's what I said, yes, sir.  AUSA: And that wasn't true?  Norwood: Not at all.").  In fact, the defendant brought the stolen USCP items back home with him to South Carolina and hid them in his trailer, where they were recovered by FBI officials upon execution of a search warrant.  The defendant also lied to

family members, as evidenced by his text messages following the riot in which he bragged about beating up law enforcement officers and disarming them. Indeed, the defendant recently participated in a voluntary interview with a local news network, in which he confirmed to the reporter that he was just joking in those messages, even though there was no indication of sarcasm or humor in those text messages.[1]

This Court's orders could not have been clearer, and there is no possible excuse for the defendant's violations. The defendant has shown, time and again, beginning with his entry into the restricted Capitol Building on January 6, 2021, that he will not respect orders from law enforcement or any other authority, and that he cannot be trusted to abide by this Court's orders. The defendant cannot be trusted to abide by any additional conditions imposed by this Court.

## IV.    If Norwood Remains on Release, His Conditions Must Include Search Conditions for His Digital Devices.

The government believes that the defendant poses a danger to his estranged wife and has shown that he cannot abide by conditions of release. If, however, the Court gives Norwood the opportunity to remain on release, at a minimum, that release should be under stricter conditions. Specifically, the government proposes that this Court order the defendant to submit all of his computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, in his home or used by those family members residing with him, to a search. A pretrial services officer may conduct a search pursuant to this condition when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner.

---

[1] *See* Renee Wunderlich, "SC Man Facing Charges for Jan. 6 Says 'It Was a Mistake to Go,'" (Jan. 7, 2022), *available at* https://www.wyff4.com/article/sc-man-facing-charges-for-jan-6-says-it-was-a-mistake-to-go/38688716# (last accessed Jan. 13, 2022).

While this search condition would not prevent the defendant from contacting potential witnesses or co-conspirators, it would hopefully deter the defendant from doing so, and would enable Pretrial Services to better supervise the defendant's compliance (or non-compliance) with his no-contact condition.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ *Hava Arin Levenson Mirell*
         Hava Arin Levenson Mirell
         Assistant United States Attorney
         Capitol Riot Detailee
         CA Bar No. 311098
         United States Attorney's Office
         312 N. Spring St., Suite 1100
         Los Angeles, CA 90012
         Phone: (213) 894-0717
         Hava.Mirell@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-233 (EGS)** |
| | : | |
| **WILLIAM ROBERT NORWOOD III,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
### MOTION TO REVOKE DEFENDANT
### WILLIAM ROBERT NORWOOD III'S PRETRIAL RELEASE

On January 13, 2022, the Government filed a Motion to Revoke Defendant William Robert Norwood III's Pretrial Release (hereinafter, "Revocation Motion"). (ECF No. 30). During a January 13 status conference, the Court ordered the defendant to file a response to the Government's Revocation Motion by February 2, 2022. On February 2, 2022, the defendant filed a Joint Motion to Amend Briefing Schedule and to Continue Status Conference. (ECF No. 31). As set forth in the defendant's Motion to Amend Briefing Schedule, after the filing of the Revocation Motion, the Government obtained additional evidence regarding the defendant's alleged violations of his conditions of pretrial release. This new evidence consists of text message conversations between the defendant and his estranged wife, which were obtained with the consent of the estranged wife. The purpose of this Supplemental Memorandum is to provide the Court with a fuller understanding of the defendant's violations based on this new evidence.

Between July 11, 2021, and January 6, 2022, the defendant exchanged approximately 7,378 text messages with his estranged wife. Approximately 74% of those messages were sent by the defendant. Norwood's messages to his estranged wife are harassing, abusive, petulant, and occasionally threatening. Exhibit 1, for example, contains twenty pages' worth of messages

exchanged between Norwood and his estranged wife from October 3 to October 5, 2021. In those messages, Norwood repeatedly threatens to reveal damaging information about his estranged wife if she contacts the authorities about his violative conduct:

> YOU will go to jail if you involve anyone else. I'm not kidding. I promise you have no idea what you're doing and clearly no idea what I have. This is why you should stop being a cruel heartless b[****] and listen to me. (Exh. 1, at 8).

> I may go to jail for a violation, but you'll go to jail for a felony. I guarantee that. I spoke to an attorney today. It's all being handled. I made sure you wouldn't get in trouble, but I'll undo that s[***] if you involve the law and get me in trouble. I am not kidding. You have no idea what I have. (*Id.* at 20).

Many of the messages between Norwood and his estranged wife pertain to marital issues, such as the return of Norwood's property or the payment of bills. But even in those conversations, the estranged wife routinely asks Norwood to stop contacting her, reminds Norwood of his no-contact order, and insists that all communications go through an attorney. For example, on September 7, 2021, the estranged wife texted Norwood: "Please stop contacting me and stalking my social media accounts . . . You have a no contact order issued from the US DISTRICT ATTORNEY GENERALS OFFICE! Please leave me alone!" On September 10, 2021, in response to a barrage of phone calls and text messages from Norwood, the estranged wife tells Norwood that she is "going to my attorneys office Monday" and "It's best to let the attorneys deal with the situation." *See* Exhibit 2, at 3, 8. On October 4, 2021, the estranged wife told Norwood, "Don't contact me again without an attorney." *See* Exhibit 1, at 11. On October 5, 2021, the estranged wife texted Norwood, "I'm blocking you. Please have an attorney contact me pertaining to any belongings. I am not your personal storage facility. It has to go. I'll be at [address] at 10am if you need to have anything discussed pertaining [to] the no contact order of your bond conditions." *Id.* at 18. On October 9, 2021, the estranged wife told Norwood, "Get an attorney to call me." On October 17, 2021, the estranged wife sent three messages to Norwood instructing

him to have his attorney contact her to arrange for the retrieval of his possessions from her residence. In sum, without wading into marital issues that are beyond the purview of this case, it is clear from the text messages that Norwood's communications with his estranged wife were often unprovoked and unwelcome.

In addition to these harassing, manipulative, and emotionally abusive messages, the defendant also exchanged several messages with his estranged wife to pressure her to invoke her spousal privilege at trial. For example, on October 23, 2021, Norwood instructed his estranged wife that, in speaking with the FBI, she should "[j]ust say that you will not agree to take the stand against your husband and you don't think I deserve what they're doing to me." He also told her that the "prosecution will tear you apart if you take the stand. They'll also ask you to be in DC for the trial. They can't make you as long as we're married." Seconds later, Norwood texted his estranged wife, "So . . . I'm not giving you a divorce ho." The estranged wife responded, "I'll make a deal with you. We can stay married until after the trial," to which Norwood replied, "DEAL."

Later that day, Norwood orchestrated a plan to have his estranged wife send him an email. In that email, the estranged wife would ask Norwood to put her in touch with his attorney. Norwood would then forward his attorney the email to make it look as though he had received an unsolicited communication from his estranged wife. At that point, Norwood would ask his attorney to contact his estranged wife so that the estranged wife could tell the attorney that she wanted to invoke her spousal privilege. At 4:26 p.m. EST, the estranged wife sent Norwood the following email:

Robert,

I need you to have your criminal attorney contact me. I am your wife. Give Peter Cooper full permissions to contact me so I am able to get a few issues addressed and better understand the current situation.

3

At around the same time, the following messages were being exchanged between Norwood and his estranged wife (Norwood's messages are in blue):



These messages show that the defendant has been violating his no-contact condition in an effort to impair the integrity of the Government's evidence at trial.  Such conduct should not be tolerated by this Court.

Finally, the text messages show that the defendant has knowingly deceived this Court and its Pretrial Services Office. On September 30, 2021, Norwood sought special authorization from this Court to attend a concert at his church on October 7, 2021. (ECF No. 25). Norwood represented to the Court that he believed the event would be "an enlightening spiritual event in the further practice of his religion." (*Id.* ¶ 2). What Norwood failed to mention, however, is that he had also invited his estranged wife to attend the concert as his guest. On September 28, 2021, the defendant texted his estranged wife: "I'm having my lawyer get me permission to see David Phelps . . . Wanna go?" Norwood's estranged wife responded: "No." In addition, the defendant has taken advantage of the leniency afforded him by this Court. On April 20, 2021, the defendant was given special permission from this Court to go to a gym, notwithstanding his home detention condition. (ECF No. 16). It appears from the text message conversations, however, that the defendant used this gym time to meet in person with his estranged wife.

The defendant has also acted duplicitously toward his Pretrial Services Officer. On January 4, 2022, during a home visit with his Pretrial Services Officer, Norwood pretended to use the bathroom, when in fact he left the room to text his estranged wife:

> Hey my PO is here on his last stop talking to me about my s[***]. I can't let him see me talking to you. Don't call. He had just showed up when you called. I did my drug test and now I'm pretending to use the bathroom. I'll text you in a bit.

Later, presumably after the Probation Officer left Norwood's residence, the defendant texted his estranged wife: "Jeez . . . my PO is pretty cool. I wish he was cooler but . . . oh well."

Even if this Court were to allow the defendant to remain on pretrial release, he should no longer remain under his mother's supervision. The text messages show that Norwood's mother failed to take corrective action when she learned of Norwood's violative conduct. For example, on September 11, 2021, the estranged wife texted Norwood's mother:

Your son has broken his emergency restraining order along with his no contact order.  I can't get it through his head to leave me alone.  The next step is to get in contact with the judges that has issued the order.  Please let him know I have contacted you and this is very serious.  I wish him the best but this has to end.

Again, on October 1, 2021, the estranged wife texted Norwood's mother: "Please have your son stop.  This is 3 weeks in a row I've been asking him to stop.  I'm going to have to say something to the judge.  He won't stop."  In sum, the defendant's mother can no longer be trusted to supervise the defendant if he is allowed to remain on home detention.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ *Hava Arin Levenson Mirell*
       Hava Arin Levenson Mirell
       Assistant United States Attorney
       Capitol Riot Detailee
       CA Bar No. 311098
       United States Attorney's Office
       312 N. Spring St., Suite 1100
       Los Angeles, CA 90012
       Phone: (213) 894-0717
       Hava.Mirell@usdoj.gov

# Exhibit 1

# [Filed Under Seal]

# Exhibit 2

# [Filed Under Seal]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 1-21-cr-233-(EGS) |
| | : | |
| WILLIAM NORWOOD | : | |
| | : | |
| _____ : | | |

### DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO REVOKE
### PRETRIAL RELEASE

William Norwood, by and through undersigned counsel respectfully requests the Court deny the government's motion to revoke pretrial release. In support of this pleading, Mr Norwood states the following.

On 20 April, 2021, the Court granted Mr Norwood's bond motion and released him on home confinement at his residence with GPS monitoring. A condition of release was a stay-away order regarding his estranged wife. On 5 January, 2022, pretrial services filed a report alleging Mr Norwood had violated the stay-away order by use of text messages. The government subsequently filed a motion to revoke pretrial release (ECF 30) followed by a supplement to that motion (ECF 34). This defense pleading comes in response to those submissions.

### Argument

Mr Norwood does not contest the text messaging was a violation of the conditions of release imposed by the Court. However, he asks the Court to consider the circumstances and context discussed here and find the conduct not rising to the level requiring pretrial detention.

Mr Norwood brings to the Court's attention that while the relationship between himself and his wife may be nearing its end, the parties are still officially married and maintain various joint property concerns. For example, and as may be seen in the text discussions, there is an automobile

that the parties still have joint responsibility for with respect to insurance, registration etc. While it is accepted in hindsight that an alternative plan or arrangement needs to be established to handle such matters, Mr Norwood wishes the Court to understand that his motive in being in connection with his wife had much more to do with an honest desire to deal with general marital business than any nefarious intent with respect to the safety of the individual.

Similarly, a reading of the texts shows a continued concern for the safety and security of his wife. As a general matter, we are conscious of the Court's interests in preserving the safety and well-being of any potential witness, but would point out that while his communications were obviously a technical violation of the Court's order, the tenor of the communications were not at odds with the Court's underlying concerns. Mr Norwood is painfully aware that the existence of the communications themselves place his pretrial status in jeopardy, but at no point was his wife endangered or threatened. In fact the texts show quite the opposite. While the relationship may be nearing its end, Mr Norwood cares very deeply for the welfare of his wife and attempted to express on several occasions his concerns. His feelings may be misplaced or even unwanted, but he is sincere in his hopes for her continued well-being.

A review of the text messages shows discussions of phone communications between the parties also. This brings into the calculus the factor of the instigator of communications. Let us be clear though, we are not suggesting that even if Ms Norwood was the first to reach-out to her husband that somehow it gave him *carte blanche* to ignore the stay-away order. We are merely pointing out that the ongoing marital situation is complex and difficult, and Ms Norwood has legitimate reasons to contact her husband making his situation confusing. It is obvious that even if Ms Norwood reached out first, Mr Norwood handled these matters poorly, but we ask the Court to note the lack of malicious intent on his part.

PeterCooperLaw

2

We would point out that this matter is William Norwood's first experience with the criminal justice system at this level, and he has no experience in these areas. It is axiomatic that throughout this period of communications he has made poor choices. In hindsight, he understands that the first thing he should've done was contact his attorney for advice. As discussed at the outset, we do not challenge that the communications were violative of the Court's instructions, but he wishes to show the Court that throughout this period his motives were honorable and it was never his intent to willfully disobey the Court. We ask the Court to take into account the absence of malicious intent and find his actions do not require pretrial detention but that a severe admonishment would be appropriate under the circumstances.

WHEREFORE, William Norwood respectfully requests the Court deny the government's request to revoke pretrial release, and allow him to remain on supervision.

Respectfully Submitted,

/s/ *Peter A. Cooper*
Peter A. Cooper, (#478-082)
400 Fifth Street, NW.
Suite 350
Washington DC 20001
pcooper@petercooperlaw.com
Counsel for William Norwood

PeterCooperLaw

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Defense Response to Government's Motion to Revoke Pretrial Release is being filed via the Electronic Court Filing System (ECF), causing a copy to be served upon government counsel of record, this 4th day of March, 2022.

/s/ *Peter A. Cooper*

Peter A. Cooper

AO 94 (Rev. 06/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
### for the
### District of South Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   6:22cr206 |
| | ) | |
| William Robert Norwood, III | ) | Charging District's |
| *Defendant* | ) | Case No.   1:21cr233 |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the _____ District of ____Columbia____ ,

*(if applicable)* _____ division.  The defendant may need an interpreter for this language:

_____N/A_____ .

The defendant:  ❏ will retain an attorney.

            X  is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date: _____Mar 14, 2022_____        _____s/Kevin F. McDonald_____

                                                 *US Magistrate Judge's signature*

CLOSED

# U.S. District Court
## District of South Carolina (Greenville)
## CRIMINAL DOCKET FOR CASE #: 6:22-cr-00206-KFM-1

Case title: USA v. NORWOOD                          Date Filed: 03/11/2022

Other court case number: 1:21cr233 District of Columbia       Date Terminated: 03/14/2022

---

Assigned to: Magistrate Judge Kevin
McDonald

**Defendant (1)**

**William Robert Norwood, III**                   represented by   **Lora Collins Blanchard**
*TERMINATED: 03/14/2022*                                            Federal Public Defender's Office (Gvle)
                                                                   Two Liberty Square
                                                                   75 Beattie Place
                                                                   Suite 950
                                                                   Greenville, SC 29601
                                                                   864-235-8714
                                                                   Fax: 864-233-0188
                                                                   Email: lora_blanchard@fd.org
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*
                                                                   *Designation: Public Defender or*
                                                                   *Community Defender Appointment*

**Pending Counts**                                 **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                              **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                     **Disposition**

BOND VIOLATION 18:1512(c)(2) and 2;
TAMPERING WITH A WITNESS,
VICTIM OR INFORMANT; Obstruction

of an Official Proceeding and Aiding and
Abetting and other counts

---

**Plaintiff**

**USA**                          represented by   **Elliott Bishop Daniels**
                                                   US Attorneys Office (Cola)
                                                   1441 Main Street
                                                   Suite 500
                                                   Columbia, SC 29201
                                                   803-929-3035
                                                   Email: Elliott.Daniels@usdoj.gov
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*
                                                   *Designation: Assistant US Attorney*

                                                   **Maxwell Barnes Cauthen , III**
                                                   US Attorneys Office (Gville)
                                                   55 Beattie Place
                                                   Suite 700
                                                   Greenville, SC 29601
                                                   864-282-2113
                                                   Fax: 864-233-3158
                                                   Email: max.cauthen@usdoj.gov
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*
                                                   *Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/14/2022 | 10 | **COMMITMENT TO ANOTHER DISTRICT as to William Robert Norwood, III. Defendant committed to District of District of Columbia. Signed by Magistrate Judge Kevin McDonald on 3/14/22.(awil, )** (Entered: 03/14/2022) |
| 03/14/2022 | 9 | **TEXT ORDER OF DETENTION as to William Robert Norwood, III: The defendant made an initial appearance before the undersigned following his arrest on a warrant from the District of Columbia for violating the conditions of his bond order set there. The government moved for detention, and the parties agreed to proceed by way of proffer. After considering the relevant filings of record, the proffered evidence, and arguments of counsel, the undersigned hereby orders the defendant detained. The government has presented reliable information that since being released on bond, the defendant has had thousands of contacts via text message with his estranged wife, in direct violation of the express no contact provision in his bond order. Further, a review of the small sample of text messages presented by the government in support of their motion and supplemental motion to revoke pretrial release (docs. 30, 34) reveal that the defendant has attempted to obstruct justice with these communications. Accordingly, the defendant's bond is revoked and he is ordered detained. IT IS SO ORDERED. Entered by Magistrate Judge Kevin McDonald on 3/14/22.(awil, )** (Entered: 03/14/2022) |

| 03/14/2022 | 8 | **TEXT ORDER APPOINTING FEDERAL PUBLIC DEFENDER Lora Collins Blanchard for William Robert Norwood, III. Entered by Magistrate Judge Kevin McDonald on 3/14/22.(awil, )** (Entered: 03/14/2022) |
|---|---|---|
| 03/14/2022 | 7 | **Minute Entry for proceedings held before Magistrate Judge Kevin McDonald: Initial Appearance in Rule 5(c)(3) Proceedings on a bond revocation as to William Robert Norwood, III held on 3/14/2022. Defendant present in custody. Federal Pubic Defender Blanchard present and appointed. Government proffered evidence. Court orders detention. Tape #Buckingham CourtSmart 3100. (awil, )** (Entered: 03/14/2022) |
| 03/14/2022 | 6 | **ORAL Order to Unseal as to William Robert Norwood, III. Entered by Magistrate Judge Kevin McDonald on 3/14/22.(awil, )** (Entered: 03/14/2022) |
| 03/14/2022 | 5 | Supplemental Rule 5c3 Documents Received as to William Robert Norwood, III: Motion, Supplemental Motion and Response (awil, ) (Entered: 03/14/2022) |
| 03/11/2022 | 4 | NOTICE OF HEARING as to William Robert Norwood, III Initial Appearance - Rule 5c3 set for 3/14/2022 10:00 AM in Greenville #3100, Carroll A Campbell Jr Courthouse, 250 East North St, Greenville before Magistrate Judge Kevin McDonald. (awil, ) (Entered: 03/11/2022) |
| 03/11/2022 | 1 | Arrest (Rule 5c3) of William Robert Norwood, III (awil, ) (Entered: 03/11/2022) |