UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL CASE NO: 1:21-CR-00233 |
| ) | |
| WILLIAM ROBERT NORWOOD, III, ) | STATUS HEARING: MAY 5, 2023 |
| ) | |
| DEFENDANT. ) | |
| ) | |

## MOTION TO DISMISS COUNT ONE

Count One of the Superseding Indictment charges Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). Defendant William Robert Norwood, III ("Robbie"), through counsel, moves to dismiss Count One pursuant to Rules 12(b)(1) and 12(b)(3)(B) of the Federal Rules of Criminal Procedure, on the basis of the Court of Appeals decision in *United States v. Fischer*, No. 22-3038 (D.C. Cir. Apr. 7, 2023), and as violative of the Fifth Amendment's Due Process Clause.

---

**COUNT ONE**

On or about January 6, 2021, within the District of Columbia and elsewhere, **WILLIAM ROBERT NORWOOD III**, also known as "Robbie Norwood," attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by

entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct.

---

**§ 1512. Tampering with a witness, victim, or an informant**

**(c)** Whoever corruptly--
    **(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
    **(2)** otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
shall be fined under this title or imprisoned not more than 20 years, or both.



## BACKGROUND

On February 25, 2021, Robbie Norwood of South Carolina, a 40-year-old father with no criminal record, was arrested and charged with misdemeanor and felony offenses related to his entry into the United States Capitol Building on January 6, 2021. On July 28, 2021, the Government obtained a Superseding Indictment to correct for errors made in the first, clarifying that the only felony charge against Mr. Norwood is Obstruction of an Official Proceeding, Count One. The remaining charges are misdemeanors related to trespass and disruption in the Capitol Building and on restricted grounds, along with one charge of misdemeanor larceny related to the taking of two items belonging to Capitol Police, conduct that occurred after Mr. Norwood exited the Capitol Building.

Robbie Norwood is not charged with assaulting any officers. Instead, Mr. Norwood defended police officers from belligerent protesters, on two occasions, in different areas of the Capitol, forming a protective circle around officers along with others like Mr. Norwood, who had a similar protective instinct.[1] Robbie is heard on video telling protesters not to touch the officers. Robbie Norwood even offered a uniformed officer, who looked parched, a blue Gatorade from his pocket.

While Robbie's colorful language in self-recorded videos inside the Capitol Building was less than polite, to put it mildly, his conduct never matched his words. Moreover, Robbie Norwood never made any comments related to the certification, or the election. In fact, Mr. Norwood didn't even vote in the 2020 Presidential Election. Instead, Mr. Norwood appears to

---

[1] At least one incident of Mr. Norwood shielding a police officer by forming a circle around him is publicly available at https://youtu.be/KjpNTN_TNfE?t=872, https://twitter.com/BGOnTheScene/status/1346931119363665923?s=20, and https://d2hxwnssq7ss7g.cloudfront.net/tXIzFNM5yp9f_cvt.mp4.

have wanted to protest in Speaker Nancy Pelosi's office, at one point exclaiming, "Where you at Nancy," and eventually finding his way to the Speaker's wing. Robbie did not break anything or cause any damage inside the Capitol Building or any office thereof. Robbie put multiple fallen items back in place when he observed them out of place. He is seen on video putting a fallen item back in its place as he walks past it.[2] Robbie Norwood did not enter any Gallery or any space where a proceeding was taking place or would have been taking place.

      Mr. Norwood at one point approaches officers near the East Rotunda door asking to be let out of the building and is told that he cannot leave, that the doors must remain closed, at which point a crowd comes up behind Robbie and crushes him into the door, the force of the crowd eventually causing the doors to reopen — this is the most serious conduct in this case, according to the Government.[3]

---

[2] The video depicting Mr. Norwood replacing a fallen object in the Capitol hallway is publicly available at https://youtu.be/DuSJ8oduGLM?t=87.

[3] At the last hearing, the Government mischaracterized this incident, stating to this Court on November 2, 2022: "Mr. Norwood was *involved* with a pretty crucial breach of one of the doors." The statement was not challenged by Mr. Norwood's court-appointed counsel in court but requires elucidation.

The East Rotunda doors were "breached," as per the government's verbiage, at 2:24 PM by George Tenney, who pleaded guilty to doing so. The doors were closed at 2:28 PM.

CCTV video then shows Mr. Norwood, along with other protesters, appearing by those doors around 2:37 PM. He is seen speaking to the officers. Then Mr. Norwood is then seen forcefully pushed into the East Rotunda doors by the crowd, the force of the crowd causing the doors to reopen at 2:38 PM. Mr. Norwood is seen pressed against the door before he begins crawling along the door back inside and away from the crush of the crowd. Robbie is then seen bending over in pain and coughing. As he moves behind the crowd to wait in the back of the group to exit from the open doors, he sees members of the crowd attacking the police officer in front, who is guarding the doors. Robbie Norwood rushes to the front of the crowd and puts himself in harm's way once again, even after being injured, to defend the officer, along with the help of other protesters, together using their bodies to form a circle to shield the officer.

Accordingly, Mr. Norwood's involvement in the reopening of the East Rotunda doors was not one of voluntary control, and therefore the Government's claim that "Mr. Norwood was involved with a pretty crucial breach of one of the doors" is a mischaracterization.

The video of all events described here is public and available at: https://youtu.be/KjpNTN_TNfE?t=224, https://twitter.com/BGOnTheScene/status/1346931119363665923?s=20, and https://d2hxwnssq7ss7g.cloudfront.net/tXIzFNM5yp9f_cvt.mp4.



Robbie Norwood's conduct inside of the Capitol Building amounted to presence and nuisance generally. Count One characterizes Mr. Norwood's conduct as disorderly and disruptive.

On November 2, 2022, Mr. Norwood appeared in front of Judge Nichols for the first time, and his court-appointed attorney and Government counsel advised the Court that the parties are awaiting a resolution of the *United States v. Fischer* case that was pending before the Court of Appeals before proceeding with a guilty plea to Section 1512(c)(2). At this hearing, the Court addressed Mr. Norwood directly and notified him that, "I have held that that count is generally not applicable to most people whose conduct, it sounds like, you had engaged in."

**COURT OF APPEALS DECISION AND APPLICABILITY ARGUMENT**

In *United States v. Fischer*, No. 22-3038 (D.C. Cir. Apr. 7, 2023), a three-judge panel of the D.C. Circuit Court of Appeals issued a fractured opinion on the scope of 18 U.S.C. § 1512(c)(2). What is supposed to be the majority opinion, titled "Opinion for the Court," written by Judge Pan, at first glance, appears to be supported by Judge Walker— that is, until Judge Walker's Concurring Opinion makes it clear that his entire concurrence is expressly conditional on a single issue: his decisive definition of "corruptly" — one that Judge Pan's opinion does not agree to; and, Judge Pan's comments add to the uncertainty of any concurrence by making it clear that her opinion is not at all based on the definition of "corruptly." The resulting majority opinion in *United States v. Fischer* is thus uncertain—obscured by the unusual concurrence and the astute dissent. The opinion in *Fischer* makes it clear that 18 U.S.C. § 1512(c) is extremely complex.

Judge Pan's opinion holds, in summary, that Section 1512(c)(2) "appl[ies] to assaultive conduct, committed in furtherance of an attempt to stop Congress from performing a constitutionally required duty." *Fischer,* *2 (Pan, F.). She reaches this conclusion through a "broad interpretation of the statute— encompassing all forms of obstructive acts." *Id*. at *12. Judge Pan goes on to explain that "the sufficiency of the indictments in this case does not turn on the precise definition of 'corruptly.'" *Id*. at *18-19.

Judge Walker joins Judge Pan in judgment and he concurs in part, he claims, but explains that in order to concur with Judge Pan, his definition of "corruptly" must control, citing *Marks v. United States. Fischer,* *22 (N.10) (Walker, J., concurring in part and concurring in judgment). Judge Walker defined "corruptly" as requiring proof of "an intent to procure an unlawful benefit". *Fischer,* *13 (Walker, J., concurring).

> Thus, "corruptly" in § 1512(c) means to act "with an intent to procure an unlawful benefit either for [oneself] or for some other person." *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting) (cleaned up). It "requires proof that the defendant not only knew he was obtaining an 'unlawful benefit' but that his 'objective' or 'purpose' was to obtain that unlawful benefit." *Id.* And that benefit may be unlawful either because the benefit itself is not allowed by law, or because it was obtained by unlawful means. *Id.*

*Id.*

In Footnote 10, on pages 22-23 of his [alleged] concurrence, Judge Walker explains the complexity of his position, which is termed as a concurrence but does not in fact appear to be one:

> In other words, **my reading of "corruptly" is necessary to my vote to join the lead opinion's proposed holding** on "obstructs, influences, or impedes" an "official proceeding." 18 U.S.C. § 1512(c)(2). **If I did not read "corruptly" narrowly, I would join the dissenting opinion**. That's because giving "corruptly" its narrow, long-established meaning resolves otherwise compelling structural arguments for affirming the district court, as well as the Defendants' vagueness concerns. See *supra* Sections III & IV.

My reading of "corruptly" may also be controlling, at least if a future panel analyzes this splintered decision under *Marks v. United States* — the test for deciding the holding of a fractured Supreme Court judgment. 430 U.S. 188, 193 (1977); *see also Binderup v. Attorney General*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc) (applying *Marks* to determine the "law of [the] Circuit").

Where, as here, "no single rationale explaining the result enjoys the assent of [a majority]" — and again, in my view, the rationale in **the lead opinion is not enough to uphold the indictments** — *Marks* says the court's holding is the "position taken" by the judge "who concurred in the judgments on the narrowest grounds." 430 U.S. at 193. The narrowest ground is a "logical subset of other, broader opinions." *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991). It is a "middle ground" that "produce[s] results that" accord with "a subset of the results" intended by each opinion. *United States v. Duvall*, 740 F.3d 604, 610 (D.C. Cir. 2013) (Kavanaugh, J., concurring in denial of rehearing en banc).

That describes my position here. I read (c)(2) to cover only *some* of the conceivable defendants the lead opinion might allow a court to convict. So my opinion is a "logical subset of [an]other, broader opinion[ ]." *Id.* (cleaned up). In contrast, the lead opinion suggests three plausible readings, including mine. Lead Op. 17-18. It then says the Defendants' alleged conduct is sufficient "[u]nder all *those* formulations." *Id.* (emphasis added). Though the lead opinion says elsewhere that it "takes *no* position on the exact meaning of 'corruptly,'" it must take *some* position on it. Lead Op. 21 n.5. Without taking a position, the lead opinion could not conclude, as it does, that the indictments should be upheld.

Put differently, if a defendant is guilty under my approach, he will be guilty under the lead opinion's. But some of the defendants guilty under the lead opinion's approach will not be guilty under my approach. Mine is the "position taken" by the panel member "who concurred in the judgment[] on the narrowest grounds." *Marks*, 430 U.S. at 193.

That is not to say that a future panel will apply *Marks* to this decision. I express no opinion about whether it should. *Cf.* Richard M. Re, *Beyond the Marks Rule*, 132 Harv. L. Rev. 1942, 1944 (2019) ("the *Marks* rule has generated considerable confusion"). But a future panel will need *some* rule to decide the holding of today's fractured decision, and the *Marks* rule would be an unsurprising choice. *Id.* ("'the *Marks* rule' . . . has been used with increasing regularity").

One last thing. To the extent it matters — and it doesn't matter under *Marks* — the lead opinion and the dissent do not agree about (c)(2)'s mental state. *Cf. Marks*, 430 U.S. at 193 (looking to the opinions of only those Justices "who concurred in the judgments on the narrowest grounds"). Rather, the dissent expressly rejects the lead opinion's approach to "corruptly," suggesting that it raises "vagueness and overbreadth concerns." *See* Dissenting Op. 33.

*Fischer,* (N.10) (Walker, J., concurring in part and concurring in judgment) (emphasis added). Judge Walker repeats this sentiment throughout his opinion:

- ◆ "Though the district court did not reach the meaning of "corruptly," we have no choice. As I will explain in Sections III and IV, my vote to uphold the indictments depends on it." *Fischer,* (N.1) (Walker, J., concurring in part).

- ◆ "Because I read 'corruptly' as courts have read it for hundreds of years — and only because I read it that way — I concur in the Court's judgment." *Id.* at *22.

After clearly explaining the prerequisite condition under which he joins the lead opinion, *a condition that does not exist*, and after he states that the lead opinion is not enough to uphold the indictments, Judge Walker then bewilderingly and inappositely states, "I also join all but Section I.C.1 and footnote 8 of the lead opinion." *Id*. at *23. (Walker, J., concurring in part). Judge Walker's comment that "[i]f I did not read 'corruptly' narrowly, I would join the dissenting opinion," is even more puzzling, as Judge Katsas' dissenting opinion is in direct contrast to Judge Pan's opinion on every element except for, maybe, obstruction.

As Judge Katsas' insightful dissent summarizes, Judge Pan's opinion boils down to rendering Section 1512(c)(2) into a lone-standing "catchall" that "criminaliz[es] any act that corruptly obstructs an official proceeding." *Fischer,* *1 (Katsas, G., dissenting). Katsas' dissent takes the opposite view on the *actus reas* — 1512(c)(2) is limited by the preceding Section 1512(c)(1), by common English, and by the broader text and structure of section 1512. Judge Katsas concludes that, "conduct alleged here violates many criminal statutes, but section 1512(c)

is not among them." *Fischer,* \*39 (Katsas, G., dissenting). Judges Katsas and Pan reach opposite conclusions because they define the term "otherwise" in opposite ways. As a result, Judge Walker's statement that he "would join the dissenting opinion" *but for* his definition of "corruptly" is inconsistent with the distinction between the Katsas and Pan opinions, which hinges on the *actus reas* term "otherwise," not on the *mens rea* term "corruptly"; and, the two opinions reach opposite conclusions on whether the alleged conduct violates section 1512(c)(2). Judge Walker's "concurring" opinion thus creates irreparable ambiguity and render's an "Opinion of the Court" nonexistent in *Fischer*.

Interestingly, **in her response to Judge Walker, Judge Pan appears to concede that there is no concurrence in this case**, stating in Footnote 5 of her opinion:

> … the instant case is a poor vehicle for applying *Marks*. First, the concurring opinion's attempt to establish its view as controlling must fail because a majority of the panel has expressly declined to endorse the concurrence's definition of "corruptly." *See supra* at 17–21; Dissenting Op. at 36–37 ("The concurrence's approach thus requires transplanting into section 1512(c)(2) a *mens rea* requirement that has been used so far only in tax law."). Second, the concurrence's definition is not one with which this opinion "must *necessarily agree as a logical consequence* of its own, broader position" because **this opinion takes *no* position on the exact meaning of "corruptly."** *King*, 950 F.2d at 782 (emphasis added). **This opinion's holding on "corruptly" is grounded in the mere *sufficiency* of the allegations in this particular case — it states only that the alleged conduct of the three appellees is sufficient under any understanding of "corrupt" intent**. *See supra* at 17–18, 21. By contrast, the concurring opinion goes further and affirmatively adopts a new test for "corrupt" intent that has not been requested by any party — that is not a "logical subset" of an opinion that expresses no preference for any definition of "corruptly." *See supra* at 18; *King*, 950 F.2d at 781; *cf. Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) ("[N]either opinion can be considered the *Marks* middle ground or narrowest opinion, as the four Justices in dissent simply did not address the issue.").

*United States v. Fischer,* (N.5) (Pan, F.) (emphasis added).

**The dueling footnotes, Footnote 10 of Judge Walker's opinion and Footnote 5 of Judge Pan's opinion, hold the key to understanding *United States v. Fischer*.**[*4]

Judge Walker states that, "my reading of 'corruptly' is necessary to my vote to join the lead opinion's proposed holding on 'obstructs, influences, or impedes' an 'official proceeding,'" while Judge Pan states that, "this opinion takes no position on the exact meaning of 'corruptly' … [t]his opinion's holding on 'corruptly' is grounded in the mere sufficiency of the **allegations in this particular case**…" — their disagreement dismantling the idea of a concurrence. The concurrence, as a result, appears to be limited to *only* the judgment of the case at hand, one that affects only three men: appellees Joseph Fischer, Edward Lang, and Garret Miller, and maybe other very similarly situated defendants.

*What, then, is the opinion of the court in United States v. Fischer? Under what circumstances is an indictment sufficient as a matter of law?* These are difficult questions to answer. As Judge Walker stated, "the lead opinion is not enough to uphold the indictments." One scenario appears to have received two votes from a panel of three Court of Appeals judges: when an assault on law enforcement is alleged to have been committed in furtherance of an Obstruction of an Official Proceeding, this grouping of allegations, when indicted together, renders a kosher indictment for Obstruction of Official Proceeding. This particular holding does not appear to be supported by the law. Judge Katsas' opinion is the entire explanation of why. Nonetheless, this issue is not relevant to the matter at hand.

---

[4] I use the term "understanding" loosely, as we should all be wise enough to admit that a holding in *United States v. Fischer* is everything *but* understandable.

In the case pending before this Court, there is no evidence or allegation of assault. To the contrary, Robbie Norwood shielded police officers from protesters with his body and offered one of the officers a refreshing beverage.

The *Fischer* opinion provides no comprehensive guidance to trial courts on what to do in a case like that of Mr. Norwood's, a case in which an assault was not committed in furtherance of an allegation of Obstruction of an Official Proceeding. There is no majority opinion from the Court of Appeals on a scenario in which a defendant is *not* accused of committing a violent crime in furtherance of the alleged Obstruction. Nonetheless, there is an example in Judge Walker's concurrence that may provide *some guidance* for Mr. Norwood's case:

> To illustrate how 'corruptly' limits the reach of § 1512(c)(2), consider how it might apply to a hypothetical rioter on January 6th. This rioter joined the throng outside Congress because he was angry at the nation's elites. He saw the riot as an opportunity to display his bravado. Though likely guilty of other crimes, he did not act 'corruptly' under (c)(2) because he did not intend to procure a benefit by obstructing the Electoral College vote count.

*United States v. Fischer,* *15 (Walker, J., concurring in part).

While not stating so explicitly, Judge Walker appears to describe disorderly and disruptive conduct as a "display [of] bravado." In his dissent, Katsas explains that only "conduct that impairs the integrity or availability of evidence" can run afoul of this code section, as opposed to disruption, or even assault. *Fischer,* *38 (Katsas, G., dissenting). As a result, it appears there are two votes from a three-judge panel that would render Mr. Norwood's alleged conduct in Count One insufficient, as a matter of law, to constitute a crime under § 1512(c)(2).

**ADDITIONAL GUIDING LEGAL STANDARDS**

Rule 12(b)(1) states: "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12(b)(1) allows the district court to consider facts in its dismissal of cases pre-trial and to dismiss the indictment when the facts alleged do not constitute the offense charged. See *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) (a district court may consider undisputed facts and dismiss an indictment before trial under Rule 12(b) based on a question of law); *United States v. Nitschke,* 843 F. Supp. 2d 4, 8-9 (D.D.C. 2011) (Judge Boasberg held that the government cannot prevent a pretrial dismissal of an indictment so long as the relevant facts are undisputed and only a question of law is presented); see also *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) ("the government's own facts proffered to the defendant and the district court simply did not conform to the allegations in the indictment"); *United States v. Brown,* 925 F.2d 1301, 1304 (10th Cir. 1991) ("it is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case"); *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994) (dismissing an indictment pursuant to Rule 12(b) based on undisputed evidence that the defendant was not present when the alleged crime was committed, establishing that he could not, as a matter of law, be charged with knowingly committing the indicted offense); *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992) (dismissal of an indictment is appropriate where undisputed facts showed that the government could not prove defendant's intent as a matter of law); *United States v. Phillips,* 367 F.3d 846, 855 & n. 25 (9th Cir. 2004). *Accord United States v. Chavez*, 460 F. Supp. 3d 1225 (D.N.M. 2020); *United States*

*v. Lund*, No. CR16-4016-MWB (N.D. Iowa Mar. 15, 2016); *United States v. Marrowbone,* 102 F. Supp.3d 1101, 1105 (D.S.D. 2015); *United States v. Lafferty*, 608 F. Supp. 2d 1131 (D.S.D. 2009); *United States v. Edmonson*, 175 F. Supp. 2d 889 (S.D. Miss. 2001); *United States v. Rodriguez*, 931 F. Supp. 907 (D. Mass. 1996); *United States v. Brady*, 820 F. Supp. 1346 (D. Utah 1993).

Additionally or alternatively, the defendant moves to dismiss Count One based on a defect in the indictment pursuant to Fed R. Crim. P. 12(b)(3)(B). "The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged." *United States v. Akinyoyenu,* 199 F. Supp. 3d. 109 (D.D.C. 2016); see also *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015). Unlike review under Rule 12(b)(1), review of a motion to dismiss under Rule 12(b)(3)(B) requires the court to contain analysis to the four corners of the indictment.

The defendant also invokes his Fifth Amendment right to Due Process under the law, because, without proper notice to the defendant as to what is prohibited, an ambiguous law violates the Due Process Clause of the Fifth Amendment. Due to the plain ambiguity of the code section at issue, the Code fails to notify the Defendant as to the extent and nature of the prohibited activity, and the severe punishment that follows it. Courts cannot impose convictions or penalties in excess of the notifications listed in the Code without running afoul of the Fifth Amendment's Due Process Clause and the standard of fair notice to defendants. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not

only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."); *Winters v. New York*, 333 U. S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."); *United States v. Allen*, 983 F.3d 463, 472 (10th Cir. 2020) ("... the Due Process Clause requires that criminal laws have clear prohibitions and penalties, because persons 'of common intelligence cannot be required to guess' what conduct the law prohibits and what penalties apply when the law is violated."); *Lankford v. Idaho*, 500 U. S. 110 (1991) (due process violated because the defendant and his counsel did not have adequate notice that judge might impose death sentence); *Jones v. United States*, 526 U.S. 227 (1999). See also *United States v. Batchelder,* 442 U.S. 114, 121 (1979) (discussing the rule of lenity as it applies to sentencing and to substantive provisions used in determining penalties); *Miller v. Florida*, 482 U. S. 423 (1987) (Ex Post Facto Clause violated by the retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia*, 378 U. S. 347 (1964) (retroactive application of new construction of statute violated due process).

Finally, the rule of lenity is clearly triggered by the ambiguities of Section 1512(c)(2). See, e.g., *United States v. Fischer*, No. 22-3038 (D.C. Cir. Apr. 7, 2023) (Katsas, G., dissenting). The rule of lenity directs courts to resolve such ambiguities in criminal laws in favor of the defendant. *Liparota v. United States*, 471 U.S. 419, 427 (1985). "'[N]o man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) (quoting *United States v. Harriss*, 347 U. S. 612, 617 (1954)); *see also McBoyle v. United States*, 283 U.S. 25, 27 (1931) (refusing to expand a criminal statute's reach without "a fair warning ... given to the world in language the common

world will understand"). Withal, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (describing lenity "as a sort of junior version of the vagueness doctrine" that "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered" (citation and quotation marks omitted)). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. See also *Wooden v. United States*, 142 S. Ct. 1062, 1082 (2022) (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws.").

**ADDITIONAL ARGUMENT**

Laws are written for laymen, not just for legal scholars. As Justice Douglass once stated: "The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited. Words which are vague and fluid may be as much of a trap for the innocent as the ancient laws of Caligula." *United States v. Cardiff*, 344 U.S. 174, 175 (1952).

In the case of Section 1512(c)(2), judges — legal scholars — have so far come to four distinct opinions on the meaning and applicability of the law. One that is joined by fourteen District Court judges and by Judge Pan, one distinct view by Judge Nichols, one distinct view from Judge Walker, and one distinct view from Judge Katsas. But what about laymen? What are

people like Robbie Norwood supposed to understand from this law, from an indictment? If scholars cannot agree — if judges cannot agree — how can Mr. Norwood be treated fairly if he is caught in the middle of this intellectual tug-of-war that is at the heart of a law supposedly written for the common man? The difference for Mr. Norwood in this interpretation is the difference between a conviction for a misdemeanor offense or one for a felony; the difference between spending up to one year in prison as opposed to twenty; the difference between keeping his constitutional right to possess firearms and losing this right if convicted of a felony. The definition of the words in this code section is the difference between two completely different futures for Mr. Norwood.

Of course, uncertainty has a resolution built into the law through the rule of lenity. Lenity resolves any ambiguity in favor of the defendant. As does review under the Due Process Clause of the Fifth Amendment, which is directly implicated in seeking a conviction or punishment under § 1512(c)(2).

Robbie Norwood is not accused of hurting anyone and is instead seen on security video shielding police officers and offering one of the officers a Gatorade from his pocket. There is no evidence of Mr. Norwood attempting to obstruct any session of Congress. Mr. Norwood's conduct does not and could not amount to a felony Obstruction of an Official Proceeding under the opinion(s) rendered in *United States v. Fischer*, No. 22-3038 (D.C. Cir. Apr. 7, 2023), nor under the original opinion of the District Court in *United States v. Fischer*, Criminal Action No. 1: 21-cr-00234 (CJN) (D.D.C. Mar. 15, 2022); see also *United States v. Lang*, Criminal Action No. 1: 21-cr-0053 (CJN) (D.D.C. June 7, 2022) (Minute Order). Moreover, Judge Walker's concurrence in *Fischer* appears to indicate that disorderly and disruptive conduct would not

PAGE 15 / 18

constitute a crime under § 1512(c)(2). *United States v. Fischer,* *15 (Walker, J., concurring in part).

Even more pertinent to this case— the Government's attempt at eliciting a guilty plea out of Mr. Norwood produced an interesting concession: **the Government does not have evidence of Mr. Norwood's corrupt intent**. In the Statement of Offense that Government counsel drafted for Mr. Norwood to sign, they wrote: "Norwood knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building. Norwood obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18." Conspicuously missing from this allegation of an offense is the Section 1512(c)(2) scienter element, *corruptly*. Even more salient is the paragraph preceding this one, where Government counsel wrote that Mr. Norwood acted "corruptly" in violing the terms of his pretrial release. It appears Government counsel had the term "corruptly" on the mind but did not have the evidence to support a corrupt intent for Obstruction of an Official Proceeding.

Indeed, there is no evidence of a corrupt intent in this case, or the intent to interfere with any proceeding of Congress. Mr. Norwood's words, while uncouth, do not connote an intent to interfere with any Congressional proceeding. If anything, his words indicate that he was searching for Nancy Pelosi in her office, a place she would not be if Mr. Norwood was aware of the Speaker's duties for that day. His statement regarding Nancy Pelosi directly contradicts any intent or understanding of the Congressional proceeding that the Government references in the Superseding Indictment. There is no evidence of Mr. Norwood's comprehension of the electoral

vote count, let alone an intent to interfere with it. Under no definition of the term "corruptly" can this case move forward, most certainly not under Judge Walker's.

Without the existence of evidence of a corrupt intent, there is no way for Count One to withstand a Rule 12(b)(1) motion, no matter which Court of Appeals decision the Court chooses to rely on, or whether the Court finds the rule of lenity applicable. The lack of evidence of a corrupt *mens rea* makes the decision to dismiss the charge against Mr. Norwood even easier.

Without evidence of assault and without evidence to support a corrupt intent, Count One of Mr. Norwood's indictment cannot proceed without violating Mr. Norwood's due process rights. Accordingly, Count One of Mr. Norwood's indictment should be dismissed.

**CONCLUSION**

For any or for all of the reasons stated herein, Counts One of the Superseding Indictment should be dismissed.

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

      I hereby certify that on April 14, 2023, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

                                                        /s/
                                      Marina Medvin, Esq.