UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-233 (CJN) |
| : | |
| WILLIAM ROBERT NORWOOD, III, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response in Opposition to Defendant Robert William Norwood, III's ("Norwood") Motion to Modify Conditions of Pretrial Release. ECF No. 57. The government opposes the proposed modification.

I.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE

As previously detailed in court filings, the Defendant entered the Senate Wing door of the U.S. Capitol Building on January 6, 2021, at approximately 2:23 p.m. – just ten minutes after rioters violently shattered the windows next to the door with stolen police riot shields and weapons. ECF No. 30 at 2. After entering the Senate Wing door, the Defendant walked south and briefly entered an office across the hall from the Old Supreme Court Chamber, recording a video of himself entering this office. In this video, the Defendant can be heard shouting: "Well we're in this bitch now. What now! This is our house . . . Where you at, Nancy?" *Id*. at 2-3. Minutes later, the Defendant led a pack of rioters through Speaker Nancy Pelosi's office suite. As the Defendant walked through the Speaker's office suite, he stole a paper coaster with the Congressional seal printed on it. The coaster was tossed to the Defendant by another rioter who was rifling through one of the desks inside Speaker Pelosi's hallway. *Id* at 3-4.

1

The Defendant then walked to the balcony outside the Speaker's chamber. There, he recorded two videos of the crowd gathered outside on the west front of the U.S. Capitol Building. In one of those videos, the Defendant can be heard shouting, "It's our house bitches." In the second video, the defendant can be heard shouting, "The soldiers' house! Go home police! Bye you bitches." *Id.* at 4-5.

After leaving the Speaker's balcony, the Defendant entered one of Speaker Pelosi's offices for approximately 25 seconds. He then walked back through the Speaker's wing, where he witnessed another rioter destroying a wooden "Speaker of the House Nancy Pelosi" sign over the archway. The Defendant eventually left the Speaker's wing and walked through the Rotunda and toward the East Rotunda doors. The East Rotunda doors were being guarded from the inside by at least three U.S. Capitol Police ("USCP") officers, including one officer clad in black riot gear. Norwood went to the front of the line of rioters gathered at the East Rotunda doors and began banging on the doors. Norwood, together with the rioters behind him, eventually pushed open the doors, which allowed hundreds of rioters to stream into the U.S. Capitol Building from the outside. *Id.* at 5.

After breaching the East Rotunda doors, rather than exit the building the Defendant continued wandering through the Capitol Building. He recorded a one-minute video of uniformed Metropolitan Police Department officers stationed inside the Rotunda. In this video, the Defendant can be heard saying, "Oh these assholes, trying to push us out . . . Should we take our house back? Our house. Y'all are a bunch of pussies. It's about to go down bro." The Defendant then turned the camera on himself and said, "It's about to go down. Cause I'm gonna go [unintelligible] guns or their asps and attack these motherf***ers later. No f***ing around, no no." *Id,* at 6.

2

The Defendant eventually exited the U.S. Capitol Building through the East Rotunda doors at approximately 2:59 p.m. After exiting the building, the Defendant stole a USCP helmet and plate carrier from a bin outside the building. Law enforcement recovered these stolen USCP items from the Defendant's trailer in South Carolina at the time of his arrest. *Id* at 7.

On July 28, 2021, a federal grand jury sitting in the District of Columbia returned a seven count Superseding Indictment stemming from defendant Norwood's involvement in the insurrection at the United States Capitol on January 6, 2021, and charging him with: (1) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) & 2; (2) Theft of Government Property, in violation of 18 U.S.C. § 641; (3) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C); (6) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (7) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 20.

Following his arrest, the Defendant had been released and placed on the high intensity supervision program, under home detention, which permitted him to leave his residence for "employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations…." as well as to "go to the gym and have visitation with his minor child." ECF 16 at 2. It also included an express condition specifically prohibiting the defendant from having any contact with his estranged wife. *Id*. The Defendant's bond conditions also advised him that: "It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation, tamper with a witness, victim, or

informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court." *Id*. at 3. As detailed previously in the Government's Motion to Revoke Defendant's Pretrial Release, the Defendant's estranged wife came forward with evidence that he had been engaged in repeated email communication with she felt were coercive and which concerned her enough to reach out to his defense attorney at the time.  ECF No. 30 at 10-11. The estranged wife's communications with Norwood and with Norwood's counsel show that the defendant had, at the very least, been pressuring his estranged wife to recant her statements to the FBI, to not be truthful, and to "keep [her] mouth shut." ECF No. 29, Att. 3. In fact, when the estranged wife texted the Defendant, "I will tell the whole truth," the defendant responded, "No you won't . . . You'll tell them you reached out to me and made the offer. That I didn't respond to you . . . Do not throw me under the bus . . . What part of spousal privilege don't you get???" ECF No. 29, Att. A. Additionally, when the estranged wife texted the Defendant, "I refuse to write another bogus f***ing email," the Defendant responded, "It's not bogus, and it will help us both. . . . Do what you said you already did. You lied to me. STOP F***ING LYING ABOUT EVERYTHING AND HELP ME LIKE YOU SAID YOU WOULD." *Id.* (emphasis in original)

Based upon the information provided to the Court, the Defendant was again arrested, and his pretrial release was revoked. ECF Nos. 29, 30, 41. The Defendant was detained on March 10, 2022. ECF No. 41 On December 15, 2022, previous counsel for the Defendant filed a motion to reconsider pretrial detention, ECF No. 50, which the government opposed. ECF No. 51. This Court granted the motion on January 4, 2023, ECF No. 51, and released the defendant under the high intensity supervision program, finding that a condition of home incarceration was appropriate. ECF No. 52.

## II.     ARGUMENT

The Defendant has now filed the instant motion to modify the terms of his pretrial release, "to be released on a personal recognizance or an unsecured appearance bond, or, in the alternative, to have his release conditions modified by removal of the unduly restrictive conditions of home incarceration, location monitoring, and prohibition on the use of internet and phone." ECF No. 57.

Although this Court is authorized to modify the conditions of release under Title 18 U.S.C. § 3142, it should not do so for this Defendant. At the time this Court ordered the Defendant released from pretrial detention, it felt that the conditions it imposed on the Defendant's supervision, including home incarceration, were appropriate given the circumstances. The Defendant's current compliance with his conditions of release does not constitute a reason to modify the conditions, as "compliance—even model compliance—with the Court's requirements is not enough to warrant adjustment of [the Defendant's] pretrial release conditions." *United States v. Henry*, 314 F. Supp. 3d 130, 133 (D.D.C. 2018). Indeed, eliminating a condition because it works as intended is contrary to common sense. The Defendant had previously been released on pretrial supervision with an express restriction on contact with his estranged wife. Under the earlier, less stringent pretrial supervision conditions (home confinement as opposed to home incarceration) he repeatedly violated this restriction. After being detained in March of 2022 he was released again in January of 2023, this time again on high intensity supervision but under home incarceration. Subject to this more restrictive supervision the Defendant has remained in compliance. From his own history of non-compliance in this case it is apparent that high intensity supervision with home incarceration is the least restrictive condition the Court can impose to "reasonably assure the

appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1).

The Defendant acknowledges in his motion that during his first period of pretrial release he had repeated impermissible contact with his estranged wife, a violation of the conditions of his release. ECF 57 at 8-9. However, he now characterizes these communications as "conversational" and "natural" even though the nature and extent of the communications were significant and troubling enough to warrant the District Court issuing an arrest warrant on March 11, 2022, ECF 41.

Even further, the Defendant asserts in his pleading that he "has not threatened, intimidated, or hurt anyone." ECF 57 at 9. But in addition to the implicitly threatening nature of his interactions with his estranged wife, the Government points to the very words that the Defendant was recorded uttering on January 6, 2021. ("Well we're in this bitch now. What now! This is our house . . . Where you at, Nancy?" ECF 30 at 2-3; "It's our house bitches." *Id.* At 4. "The soldiers' house! Go home police! Bye you bitches." *Id.* at 4-5; "Oh these assholes, trying to push us out . . . Should we take our house back? Our house. Y'all are a bunch of pussies. It's about to go down bro…. It's about to go down. Cause I'm gonna go [unintelligible] guns or their asps and attack these motherf***ers later. No f***ing around, no no." *Id,* at 6.)

**III.    CONCLUSION**

For these reasons articulated above, the Government respectfully requests that the Court deny the Defendant's motion to modify the conditions of his pretrial release, and that the Defendant remain on high intensity supervision with home incarceration.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    *Joseph S. Smith, Jr.*
JOSEPH S. SMITH, JR.
Assistant United States Attorney
CA Bar No. 200108
601 D Street, N.W.
Washington, D.C. 20001
(619) 546-8299
Joseph.s.smith@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2023, I caused the foregoing to be filed via the Court's electronic filing system (CM/ECF), which will serve copies upon all counsel of record.

By:  /s/ *Joseph S. Smith, Jr.*
JOSEPH S. SMITH, JR.