**Nos. 23-32, 23-94**

In The
# Supreme Court of the United States

———— ◆ ————

EDWARD JACOB LANG,

*Petitioner,*

v.

UNITED STATES OF AMERICA,

*Respondent.*

———— ◆ ————

GARRET MILLER,

*Petitioner,*

v.

UNITED STATES OF AMERICA, *et al.*,

*Respondents.*

———— ◆ ————

**On Petitions For A Writ Of Certiorari
To The United States Court Of Appeals
For The District Of Columbia Circuit**

———— ◆ ————

**BRIEF OF *AMICI CURIAE*
CHRISTOPHER WARNAGIRIS,
CHRISTOPHER CARNELL, AND
WILLIAM ROBERT NORWOOD, III
IN SUPPORT OF PETITIONERS**

———— ◆ ————

MARINA MEDVIN
MEDVIN LAW PLC
916 Prince Street
Alexandria, VA 22314
(888) 886-4127
contact@medvinlaw.com

THEODORE M. COOPERSTEIN
*Counsel of Record*
CLOUTHIER COOPERSTEIN PLLC
1020 Highland Colony Parkway,
  Suite 803
Ridgeland, MS 39157
(601) 397-2471
ted@msappellatelawyers.com

COCKLE LEGAL BRIEFS (800) 225-6964
WWW.COCKLELEGALBRIEFS.COM

i

## TABLE OF CONTENTS

Page

INTEREST OF THE *AMICI CURIAE* ................ 1

STATUTORY PROVISION INVOLVED.............. 3

SUMMARY OF THE ARGUMENT ..................... 3

REASONS FOR GRANTING THE PETITIONS .... 5

    A.   The Court of Appeals Has Decided an Important Question of Federal Law That Has Not Been, But Should Be, Settled by This Court, and Has Decided That Important Federal Question in a Way That Conflicts with Relevant Decisions of This Court............................................................ 5

    B.   The Three Divergent Opinions Below Do Not Reconcile, and They Provide No Clear Guidance for Application of 18 U.S.C. §1512(c)(2) ................................................. 8

    1.   The Opinions Make Everything and Nothing Culpable Conduct......................................... 10

    2.   *Mens Rea* Eludes Definition in the Opinions...................................................... 13

    3.   Section 1512(c) Has Become Unmoored and Ill-defined ................................................... 15

    C.   The Decision Below Invites Profligate Abuse of the Statute ................................................. 16

    D.   Now Is the Time for the Court to Address the Issue, and These Cases Are an Excellent Vehicle to Decide the Question Presented ..... 20

CONCLUSION.................................................... 21

ii

TABLE OF CONTENTS – Continued

Page

APPENDIX

Government's Proposed Jury Instruction for
18 U.S.C. § 1512(c)(2) ....................................... App. 1

Letter of Timothy Cone, August 4, 2023 ............. App. 4

Letter of James Pearce, August 15, 2023 ............ App. 7

iii

## TABLE OF AUTHORITIES

Page

CASES

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005)................................................17

*Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687 (1995)................................8

*Blockburger v. United States*, 284 U.S. 299 (1932)........................................................16

*Duncan v. Walker*, 533 U.S. 167 (2001) ........................8

*Elonis v. United States*, 575 U.S. 723 (2015)................9

*Hubbard v. United States*, 514 U.S. 695 (1995) ...........7

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013)..........7

*Powell v. Texas*, 392 U.S. 514 (1968) .............................9

*Pugin v. Garland*, 599 U.S. ___, 143 S. Ct. 1833 (2023)........................................................20

*Ratzlaf v. United States*, 510 U.S. 135 (1994) .............8

*Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264 (2023) .......................................................20

*United States v. Batchelder*, 442 U.S. 114 (1979).........7

*United States v. Butler*, 297 U.S. 1 (1936)....................8

*United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023)..........................................2, 5-7, 10-15, 20, 21

*United States v. Gilliland*, 312 U.S. 86 (1941) .............7

*United States v. Menasche*, 348 U.S. 528 (1955) ..........6

*United States v. Miller*, 589 F. Supp. 3d 60 (D.D.C. 2022) .................................................5, 10, 11

iv

TABLE OF AUTHORITIES – Continued

Page

*United States v. Robertson*, Case No. 22-3062 (D.C. Cir.)................................................................19

*United States v. Trump*, Case No. 1:23-cr-257-TSC (D.D.C. indictment filed Aug. 1, 2023)............18

*Western Fuels – Utah, Inc. v. Federal Mine Safety & Health Rev. Comm'n*, 870 F.2d 711 (D.C. Cir. 1989) ........................................................................9

*Whalen v. United States*, 445 U.S. 684 (1980)............15

*Williams v. Taylor*, 529 U.S. 362 (2000)......................6

STATUTES

18 U.S.C. §111 ....................................................2, 17

18 U.S.C. §111(a)......................................................1

18 U.S.C. §1512 ................................. 2, 6, 10, 11, 17, 18

18 U.S.C. §1512(c) ........................................ 3, 5, 12, 15

18 U.S.C. §1512(c)(1)....................................5-7, 10, 11

18 U.S.C. §1512(c)(2)................................1, 2, 4-7, 9-20

18 U.S.C. §1512(k).....................................................18

18 U.S.C. §3731 .........................................................20

RULES

Fed. R. App. P. 28(j)...................................................19

Sup. Ct. R. 10(c) ..........................................................8

Sup. Ct. R. 37 ...............................................................1

v

TABLE OF AUTHORITIES – Continued

Page

OTHER AUTHORITIES

*Multiplicity*, Black's Law Dictionary (9th ed. 2009) ........................................................................16

4 WM. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND (1769) ....................................................9

Margot Cleveland, *Ethics Complaint Filed Against Congressman Who Slurred Whistle-blowers*, The Federalist (July 14, 2023), https://thefederalist.com/2023/7/14/exclusive-ethics-complaint-filed-against-congressman-who-slurred-whistleblowers/ ...............................19

Lee Fang, *How One Trump January 6 Charge Could End Up Criminalizing Left-Wing Protest*, Lee Fang Substack (Aug. 3, 2023), www.leefang.com/p/how-one-trump-january-6-charge-could ........................................................19

1 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW (2003).........8

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (2012) .................6

1

## INTEREST OF THE *AMICI CURIAE*[1]

*Amici* Christopher Warnagiris, Christopher Carnell, and William Robert Norwood, III are defendants in three criminal prosecutions pending in the United States District Court for the District of Columbia. Each *amicus's* indictment charges the defendant with violation of Title 18, United States Code, Section 1512(c)(2), the statutory provision at issue in the present Petitions. Each *amicus* attended the election protest on January 6, 2021, and entered the United States Capitol Building. The Petitions challenge the Court of Appeals ruling that affects their pending criminal cases. The outcome of these Petitions will control the proceedings and affect outcomes in the trials of *amici curiae* Warnagiris, Carnell and Norwood.

Christopher Warnagiris is the defendant in Case No. 1:21-CR-382-PLF (D.D.C.). The Second Superseding Indictment in that case charges Warnagiris with nine counts, including violations of 18 U.S.C. §1512(c)(2) and 18 U.S.C. §111(a). Warnagiris has moved to dismiss the §1512(c)(2) charge, and that motion is pending in the district court.

Christopher Carnell is the defendant in Case No. 1:23-CR-139-BAH (D.D.C.). The Indictment charges Carnell with six counts, including violation of 18 U.S.C. §1512(c)(2). Carnell's indictment does not charge

---

[1] Rule 37 Statement: All parties were timely notified of the filing of this brief. No part of this brief was authored by any party's counsel, and no person or entity other than *amici* funded its preparation or submission.

2

assault under 18 U.S.C. §111. Christopher Carnell was eighteen years old when he entered the Capitol, wearing a school backpack embroidered with his name, that his mother had bought for him. Although the §1512(c)(2) count was the only felony charged beside misdemeanors for the same conduct in his indictment, Carnell received no plea offer that would not include a plea to that felony – despite his youth. Carnell has moved to dismiss the charge under §1512(c)(2), and that motion is pending in the district court.

Robert Norwood is the defendant in Case No. 1:21-CR-233-CJN (D.D.C.). The Indictment charges Norwood with seven counts, including violation of 18 U.S.C. §1512(c)(2). Norwood's indictment does not charge assault under 18 U.S.C. §111. Norwood has moved to dismiss the §1512(c)(2) charge, and that motion is pending in the district court.

*Amici* Carnell and Norwood have not been charged with assault. Both have argued to the district court that, based on the lack of a clear majority opinion in *United States v. Fischer*, a narrow reading of the panel opinions requires the Government to charge both §111 as predicate and §1512(c)(2) in the same indictment, when there is no allegation of witness tampering, or evidence impairment, in order to uphold the §1512(c)(2) charge.

———————◆———————

3

## STATUTORY PROVISION INVOLVED

Subsection (c) of Section 1512, Title 18, United States Code, provides:

(c)   Whoever corruptly –

(1)  Alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or

(2)  Otherwise obstructs, influences or impedes any official proceeding, or attempts to do so,

Shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. §1512(c).

———————◆———————

## SUMMARY OF THE ARGUMENT

The notoriety of the January 6 election protest combined with the prestige of the District of Columbia Circuit exacerbate the dangers flowing from the flaws and inconsistencies of the court of appeals opinions. Contrary to this Court's precedent, the court of appeals decision misapplies statutory interpretation precepts to conflate subsections of a single statute where Congress meant each subsection to have separate effect. The three opinions are a "dog's breakfast" of irreconcilable and divergent viewpoints that confuse rather

4

than enlighten criminal law practitioners and citizens alike.

Trial courts at present, together with prosecution and defense lawyers, have no clear guidance on the requirements or scope of section 1512(c)(2). The three court of appeals opinions do not agree on culpable conduct nor on the mental state necessary to prove guilt. Any conduct can now be criminal so long as it occurs in the vicinity of an official proceeding. The *mens rea* for guilt can be whatever mental state associates with the offense conduct a prosecutor chooses to indict. The only conduct known to qualify in this broad view is an actual assault – of which only a subset of defendants is simultaneously charged, and now the rest wonder if that is necessary to sustain section 1512(c)(2).

The Government has lost no time in capitalizing on the new loosened version of section 1512(c)(2). Over two hundred thirty cases in the District of Columbia alone have charged defendants under the statute. Across the nation, the risks of error multiply – in addition to numerosity, those districts will now also apply a reinterpreted section 1512(c)(2) to more traditional instances of judicial obstruction and evidence impairment, beyond assault or trespass in the Capitol Building. The effects can already be seen in new indictments and public speculation and opinion.

To prevent a cascade of errors and misconceptions in the application of the law and undeserved harm to the defendants and the public perception of the courts, this Court should promptly take up for review these

5

Petitions. The legal issue is plainly presented on accepted facts, with the benefit of capable jurists' opinions that cover the field of possible interpretations of the law. The Court should grant certiorari.

———————◆———————

**REASONS FOR GRANTING THE PETITIONS**

**A.   The Court of Appeals Has Decided an Important Question of Federal Law That Has Not Been, But Should Be, Settled by This Court, and Has Decided That Important Federal Question in a Way That Conflicts with Relevant Decisions of This Court.**

Each court below has grappled with the meaning of the statute's wording in 18 U.S.C. §1512(c). *United States v. Miller*, 589 F. Supp. 3d 60, 66-67 (D.D.C. 2022); *United States v. Fischer*, 64 F.4th 329, 333-34, 351, 363 (D.C. Cir. 2023). The resulting opinions disagreed over how the two subsections of the one statute, subsection (c)(1) and subsection (c)(2), interact with each other, and thereby reached different conclusions whether the Government has improperly charged the defendants under 18 U.S.C. §1512(c)(2).

The Court has not yet confronted the issue of 18 U.S.C. §1512(c) and the proper reading of the entire statute with its subsections to give full effect to Congressional intent. While disagreeing in the outcome, four separate opinions below ably present and discuss in detail the alternative ways to interpret the statute and its subsections (c)(1) and (c)(2). The prevailing

6

court of appeals opinions, reversing the district court and reinstating the indictments, have reached that conclusion in a way that conflicts with the Court's relevant decisions concerning internal interpretation of statutory text.

The longstanding rule has been that courts should give effect to every portion of a single statute, or section of the United States Code, such as 18 U.S.C. §1512. No portion of an individual section, if possible, should be read out of the statute or deemed superfluous. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (the canon against surplusage is a "cardinal principle of statutory construction" that "we must give effect, if possible, to every clause and word of a statute"); *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute"); *see* 64 F.4th at 363. *See also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (Surplusage Canon).

In reading §1512, the district court applied this canon of interpretation to find that subsection (c)(1) specifically limits the scope of subsection (c)(2), so that subsection (c)(2) "operates as a catchall to the narrow prohibition Congress created in §1512(c)(1) – not as a duplicate to nearly all of §1512." 589 F. Supp. 3d at 74.

The prevailing court of appeals opinions overruled the district court and chose the opposite approach, considering subsection (c)(2) to cover any independently unlawful activity. 64 F.4th at 336, 351. The dissent pointed out that with this reading, subsection (c)(2)

7

"would swallow up all of the immediately preceding subsection (c)(1)," and the opinion therefore renders subsection (c)(1) superfluous. 64 F.4th at 374; *id*. at 371 (canon against surplusage).

In response, the lead opinion dismissed this concern by quoting, out of context, the district court: "superfluity is not typically, by itself, sufficient to require a particular statutory interpretation." 64 F.4th at 348 (citing 589 F. Supp. 3d at 73 (internal citation omitted)). In so doing, the lead opinion indirectly invoked and relied upon this Court's ruling in *Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995). In *Hubbard* at footnote 14, the Court noted that "Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct." *Id*. (citing *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979); *United States v. Gilliland*, 312 U.S. 86, 95 (1941)).

But the Court in *Hubbard* and the other two cases was discussing separate statutes and sections that might cover the same conduct, when Congress has deliberately chosen to enact such separate laws. In this case, the lower courts confronted the internal subparts of just one solitary section of the Code. "Subsections (c)(1) and (c)(2) are not just part of the same statutory scheme; **they are part of one sentence**, and they share a single *mens rea* requirement, and a single authorized punishment." 64 F.4th at 371 (Katsas, J., dissenting) (emphasis added). *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would

8

render superfluous another part of the same statutory scheme"); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001); *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698 (1995); *Ratzlaf v. United States*, 510 U.S. 135, 140 (1994); *see also United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used.").

The lead opinion mischaracterizes this Court's precedent, and that error contravenes the canon's intent – instead of clarifying and narrowing an ambiguous statute, the opinion blows open the statute to accept all manner of offense conduct without distinction.

Accordingly, the Court should grant the Petitions for certiorari. Sup. Ct. R. 10(c).

**B.   The Three Divergent Opinions Below Do Not Reconcile, and They Provide No Clear Guidance for Application of 18 U.S.C. §1512(c)(2).**

Basic principles of criminal law establish two elements to any crime: culpable conduct (*actus reus*); and the necessary state of mind (*mens rea*). *See*, *e.g.*, 1 W. LaFave, Substantive Criminal Law §5.5, p. 381 (2003) ("For several centuries (at least since 1600) the different common law crimes have been so defined as to require for guilt, that the defendant's acts or omissions be accompanied by one or more of the various types of fault (intention, knowledge, recklessness or – more

9

rarely – negligence."); *see also* 4 WM. BLACKSTONE, COM-
MENTARIES ON THE LAWS OF ENGLAND *21 (1769) ("In-
deed, to make a complete crime, cognizable by human
laws, there must be both a will and an act. . . . So that,
to constitute a crime against human laws, there must
be, first a vitious will; and, secondly, an unlawful act
consequent upon such vitious will."). *See Elonis v.
United States*, 575 U.S. 723, 734 (2015) ("wrongdoing
must be conscious to be criminal. . . . [T]he general rule
is that a guilty mind is a necessary element in the in-
dictment and proof of every crime.") (cleaned up); *West-
ern Fuels – Utah, Inc. v. Federal Mine Safety & Health
Rev. Comm'n*, 870 F.2d 711, 713 (D.C. Cir. 1989) ("The
general rule of both civil and criminal responsibility is
that a person is not liable for a harm done unless he
caused it by his action (*actus reus*), and did so with a
certain intent (*mens rea*)."); *see generally Powell v.
Texas*, 392 U.S. 514, 535-36 (1968) ("We cannot cast
aside the centuries-long evolution of the collection of
interlocking and overlapping concepts which the com-
mon law has utilized to assess the moral accountability
of an individual for his antisocial deeds."). The lower
court opinions present contradictory approaches to
this offense's elements.

The district court, in a detailed and thorough anal-
ysis, examined 18 U.S.C. §1512(c)(2), then applied its
analysis to the Petitioners' indictments. Judge Nichols
discerned limiting factors that placed the crime within
a subset category of conduct, and, on those criteria, re-
jected the application of §1512(c)(2) to the Petitioners,

10

without considering *mens rea*. *Miller*, 589 F. Supp. 3d 60 (D.D.C. 2022).

On review by the Court of Appeals, the panel issued three opinions. *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). Close reading of the opinions finds no consensus or majority as to either the conduct prohibited, nor the minimal level of intent to commit the crime, in the statute.

### 1. The Opinions Make Everything and Nothing Culpable Conduct.

The district court interpreted §1512 to conform subsections 1512(c)(1) and (c)(2) to each other. 589 F. Supp. 3d at 67. With subsection (1) proscribing acts to "alter, destroy, mutilate or conceal a record, document or other object," both parties agreed with the district court that the crux was the meaning of "otherwise" in subsection (2) to determine what additional conduct (2) covers. *Id*. Judge Nichols concluded "that §1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record or other object in order to corruptly obstruct, impede or influence an official proceeding." *Id*. at 78.

In rejecting the Government's broader view, Judge Nichols noted the danger that subsection (c)(2), if read too broadly, essentially swallows up subsection (c)(1) – and thereby challenges why Congress would have bothered to specify the subset of conduct in (c)(1) at all. Reading (c)(2) to include (c)(1)

11

would also create substantial superfluity problems. After all, if subsection (c)(2) is not limited by subsection (c)(1), then the majority of §1512 would be unnecessary. . . . But here, such substantial overlap **within the same section** suggests that Congress did not mean §1512(c)(2) to have so broad a scope.

589 F. Supp. 3d at 73-74 (emphasis added).

At the court of appeals, no two of the three judges agreed on what conduct violates the statute. Judge Pan read section 1512(c)(2) directly contrary to the district court's reading, to prohibit "all forms of obstructive conduct that are not covered by subsection (c)(1)." 64 F.4th at 336-37. This broad scope includes the assaultive conduct charged against Petitioners (and *amicus* Warnagiris). In this view, the statute "plainly extends to a wide range of conduct." *Id*. at 339. The limits to any acts prosecuted would lie only in the statute's requirements that the defendant act "corruptly" (see below) and "the behavior must target an official proceeding." *Id*.

The "concurring" opinion similarly viewed the culpable conduct as broad. Judge Walker agreed, without considering other conduct, that Petitioners' alleged assaults "are the kind of obstructive conduct proscribed by (c)(2)." *Id*. at 351. So long as the charged act "meets the test of independently unlawful conduct," *id*. at 340, the next and decisive criterion would be whether the act was done "corruptly." *Id*. at 351-52 ("(c)(2) has a broad act element"). By accepting the charged assaults as presumptively sufficient to §1512(c)(2), but going no

12

further, this opinion sustained the indictments of Petitioners, but it leaves other defendants bereft of guidance – especially those who did not commit assault.

The dissenting opinion read §1512(c) as constrained to an evidence-focused interpretation, "applying section 1512(c) only to acts that affect the integrity or availability of evidence." *Id*. at 363. Agreeing with the district court's analysis, the dissent identified conduct affecting availability of relevant evidence or testimony, without concern to define or explore the necessary *mens rea*. *Id*. at 382 ("Rather than try to extract meaningful limits out of that broad and vague adverb ['corruptly'], we should have acknowledged that Congress limited the *actus reus* to conduct that impairs the integrity or availability of evidence.").

No two of the three opinions agree or overlap enough to instruct a prosecutor or defense attorney, what conduct can be charged or how to defend the charge. The dissent alone narrowly limits the relevant conduct to witness tampering, forgery, evidence spoliation and the like. The remaining two opinions both read the statute broadly to permit any independently unlawful conduct as *actus reus* – thereby importing anything and everything as conduct that violates any other law. Nothing unique or distinctive is now established through section 1512(c)(2); that language now charges nothing additional as improper conduct. Yet now the 20-year maximum penalty applies to everything otherwise unlawful. As shown below, the Government has already taken this interpretation as license to charge anything against any defendant.

13

### 2.    *Mens Rea* Eludes Definition in the Opinions.

As with the problem of defining culpable conduct under the statute, so too the three opinions do not define the mental state providing criminal *mens rea*.

Judge Pan interpreted §1512(c)(2) to have a *mens rea* level as capacious or flexible as the corresponding *actus reus* criteria – importing the mental state of the already otherwise unlawful act. *Id*. at 340 (corrupt intent exists "when an obstructive action is independently unlawful"). This follows from the opinion's allowance for any unlawful act to constitute an act of obstruction under the statute: The corresponding *mens rea* thereby becomes the existing mental state already associated with that imported crime. The mental state necessary would therefore be as high or as low a bar as would match the criminal conduct any prosecutor chose to indict, and otherwise unpredictable.

This opinion deemed it unnecessary to define a more precise criminal intent, satisfied for the purposes of Petitioners' cases, to find them culpable. *Id*. at 340 ("The sufficiency of the indictments in this case does not turn on the precise definition of 'corruptly.' Because the task of defining 'corruptly' is not before us and I am satisfied that the government has alleged conduct by appellees sufficient to meet that element, I leave the exact contours of 'corrupt' intent for another day.").

Judge Walker's opinion found a limiting principle in the word "corruptly." *Id*. at 351 ("I believe we *must* define that mental state to make sense of (c)(2)'s act element.") (emphasis original). Whatever the offending

14

act, it must be done "with an intent to procure an un-
lawful benefit either for himself or for some other per-
son." *Id.* at 352. "The defendant must not only know he
was obtaining an unlawful benefit, it must also be his
objective or purpose." *Id.* (cleaned up).

The dissent rejected that definition of "corruptly,"
considering specific criminal intent applicable only in
tax prosecutions. *Id.* at 381 ("The concurrence's ap-
proach thus requires transplanting into section
1512(c)(2) an interpretation of *corruptly* that appears
to have been used so far only in tax law."). Instead, the
dissent took the route of the district court to narrow
the subject conduct, limiting the scope and reach of the
statute. *Id.* at 382 ("Rather than try to extract mean-
ingful limits out of that broad and vague adverb, we
should have acknowledged that Congress limited the
*actus reus* to conduct that impairs the integrity or
availability of evidence.").

The net effect of these three opinions is to leave
the mental state element undefined, without contours,
in section 1512(c)(2). At one end of the spectrum, Judge
Pan dismisses concern over *mens rea*, so long as the
conduct is obstructive, otherwise unlawful, and di-
rected toward an official proceeding. At the other end,
Judge Walker requires a specific intent to seek an im-
proper benefit for oneself or another. The dissent re-
quires only a knowing mental state, but strictly limits
chargeable acts to conduct that impedes a witness or
otherwise impairs evidence.

15

### 3.   Section 1512(c) Has Become Unmoored and Ill-defined.

The supposed majority opinions both read the statute broadly, but they only agree to reverse the district court. *Id.* at 351 ("Appellees' alleged conduct falls comfortably within the plain meaning of" §1512(c)); *id.* at 361 ("Even under the proper, narrow reading of 'corruptly,' the indictments should be upheld."). Outside the narrow context of these Petitioners' cases, the two opinions do not converge. *Compare id.* at 340-41 & n.5 ("It is more prudent to delay addressing the meaning of corrupt intent" to a later case) *with id.* at 351, 363 & n.10 ("my reading of 'corruptly' is necessary to my vote to join the lead opinion's proposed holding.").

Beyond those specific assaults charged, the opinions cannot agree how to go forward: Judge Walker's concurrence expressly conditions a holding upon the definition of "corruptly" to qualify charged conduct. *Id.* at 362 & n.10 ("If I did not read 'corruptly' narrowly, I would join the dissenting opinion."). But Judge Pan's opinion explicitly rejects such a condition. *Id.* at 341 & n.5 ("a majority of the panel has expressly declined to endorse the concurrence's definition of 'corruptly'."). There are three disparate positions as to *mens rea*.

With every unlawful act now chargeable under 1512(c)(2), so long as there is an official proceeding to which it can relate, there is no longer any specific standard attached to the statute. Without distinct characteristic elements, the 1512(c)(2) offense when charged becomes multiplicitous. *See Whalen v. United*

16

*States*, 445 U.S. 684, 691-92 (1980) ("multiple punish-
ments cannot be imposed for two offenses arising out
of the same criminal transaction unless each offense
requires proof of a fact which the other does not. . . .
The assumption underlying the rule is that Congress
ordinarily does not intend to punish the same offense
under two different statutes.") (cleaned up); *Block-
burger v. United States*, 284 U.S. 299 (1932) (unless
each offense requires proof of different facts, charges
are multiplicitous). *See also Multiplicity*, Black's Law
Dictionary (9th ed. 2009) ("The improper charging of
the same offense in more than one count of a single
indictment or information."). In other words, section
1512(c)(2) as interpreted below now adds no distinct
and separate offense to an indictment, rather it dou-
bles another charged offense in a second, repetitive
count, in any indictment that would charge §1512(c)(2)
together with the "independently unlawful act" com-
prising the predicate offense conduct.

### C.   The Decision Below Invites Profligate Abuse of the Statute.

Left undisturbed, the court of appeals decision re-
verses the district court and restores the indictments
against Petitioners. But all other present and future
defendants facing section 1512(c)(2) charges suffer
greater uncertainty than before the decision.

*Amici* Carnell and Norwood, for instance, have not
been charged with assault. The disharmony of the
three court of appeals opinions seems to require the

17

Government to charge in the same indictment an assault under §111 as a predicate for §1512(c)(2), when there is no allegation of witness tampering or evidence impairment.

The question remains whether the Government may prosecute *amici* via section 1512(c)(2) for attendance at the protest, or other conduct not directed to evidence impairment, nor specifically and independently unlawful; nor can these *amici* yet know what level of *mens rea* the Government must prove beyond a reasonable doubt to convict *amici*.

This indeterminacy has already taken effect in the district court as trial judges in the District of Columbia consider proposed jury instructions for section 1512(c)(2). A copy of such a prosecution jury instruction now circulating in the district courts in the District of Columbia is appended to this brief. App. 1. The instruction does not define "obstruct" or "obstruction." *Cf. Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005) (reversing conviction under 18 U.S.C. §1512 where "the jury instructions at issue simply failed to convey the requisite consciousness of wrongdoing. . . . The instructions also diluted the meaning of 'corruptly' so that it covered innocent conduct.").

Problems grow exponentially with the volume of January 6 related prosecutions by the Government in the District of Columbia. A search of the clerk of court's

18

online docket for indictments charging section 1512(c)(2) since January 7, 2021, revealed 236 cases.[2]

Nor should the Court overlook the continued prosecution of section 1512(c)(2) in more traditional investigations nationwide. Uncertain, if not also inaccurate, interpretations and precedents as to section 1512 will have far-reaching impact in the traditional administration of justice crimes of witness tampering and intimidation, evidence impairment, and other yet unknown new conceptions of obstruction, arising in routine federal judicial proceedings.

The widespread publicity surrounding these prosecutions has also driven public discussion and speculation about innovative uses and abuses of the statute. One very high-profile indictment in the district court invokes section 1512(c)(2) to address election protests and political speech, yet also adds the organic conspiracy provision of 18 U.S.C. §1512(k) to further muddle these issues. *See United States v. Trump*, Case No. 1:23-cr-257-TSC (D.D.C. indictment filed Aug. 1, 2023) (Count 2: 18 U.S.C. §1512(k) (Conspiracy to Obstruct an Official Proceeding); Count 3: 18 U.S.C. §1512(c)(2)

---

[2] The online portal for the U.S. District Court for the District of Columbia Clerk's Office Case Management/ Electronic Case Filing system (CM/ECF) permits query of the dockets for all filed cases. A search was made on Aug. 24, 2023, for all charged felony counts of 18 U.S.C. §1512(c)(2), in both disposed and pending cases, which identified 236 cases.

19

(Obstruction of and Attempt to Obstruct an Official Proceeding)).[3]

Public debate over politically charged controversies has already invoked the unbound reading of section 1512(c)(2) expansively against elected officials and public figures. *See*, *e.g.*, Margot Cleveland, *Ethics Complaint Filed Against Congressman Who Slurred Whistleblowers*, The Federalist (July 14, 2023), https://thefederalist.com/2023/7/14/exclusive-ethics-complaint-filed-against-congressman-who-slurred-whistleblowers/ ("The complaint also suggests . . . an arguable violation of Section 1512(c)(2) of the criminal code."); Lee Fang, *How One Trump January 6 Charge Could End Up Criminalizing Left-Wing Protest*, Lee Fang Substack (Aug. 3, 2023), www.leefang.com/p/how-one-trump-january-6-charge-could ("the novel application of the [1512(c)(2)] felony charge may open the prosecutorial equivalent of Pandora's box.").

The Court should take these cases to address these matters of great public interest, and to forestall inconsistent outcomes in both traditional and innovative prosecutions under the witness tampering and obstruction of justice statutes.

---

[3] The *Trump* indictment had immediate impact on ongoing District of Columbia cases: In *United States v. Robertson*, Case No. 22-3062 (D.C. Cir.), the indictment language alone prompted Fed. R. App. P. 28(j) letters to the Court of Appeals from both parties, concerning multiple inconsistent government interpretations of §1512(c)(2). Those letters are appended to this brief. App. 4; App. 7.

20

### D.   Now Is the Time for the Court to Address the Issue, and These Cases Are an Excellent Vehicle to Decide the Question Presented.

These cases provide a precise and timely vehicle for the court to solidify the proper focus of the law and forestall likely disruption of an important category of federal criminal law. The present cases come to the Court in the posture of pretrial motions granted to dismiss the count charging section 1512(c)(2). The United States exercised its right of interlocutory appeal from the district court orders of dismissal under 18 U.S.C. §3731. 64 F.4th at 335, 364. It is not unusual for this Court to take such matters on certiorari at that stage. *E.g.*, *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264 (2023) (interlocutory appeal in a criminal case).

Furthermore, the Court in its most recent Term engaged in analysis of federal obstruction of justice law. *Pugin v. Garland*, 599 U.S. ___, 143 S. Ct. 1833 (2023) (determining for purposes of immigration law the types of charges that qualify as "obstruction of justice" and therefore as aggravated felonies). The Court accordingly has recent familiarity with the subject area and is prepared now to examine the legal issues.

The cases' posture offers the straightforward legal question in a well-defined context, without dispute of material facts, but resting instead on the accepted face of the indictments' averments. The cases present only that legal question, and they present it squarely and cleanly. The three lower court opinions provide the

21

Court with the widest range of approaches to the question. And finally, the arrival of this issue now at the front of the earliest wave of January 6 cases permits the Court to decide the legal questions and lower courts to timely implement the Court's ruling.

Promptness precludes too many other cases from going too far astray, addressing significant errors before they might lead to unjust results, like deviations from Congressional intent or established principles of law. Timely clarification of the *Fischer* decision also will preserve and protect individual defendants' rights in many derivative cases implicating the array of judicial integrity crimes in the same chapter of the criminal code.

———————◆———————

## CONCLUSION

The Court should grant the Petitions for certiorari.

Respectfully submitted,

THEODORE M. COOPERSTEIN
  *Counsel of Record*
CLOUTHIER COOPERSTEIN PLLC
1020 Highland Colony Parkway,
  Suite 803
Ridgeland, MS 39157
(601) 397-2471
ted@msappellatelawyers.com

22

MARINA MEDVIN
MEDVIN LAW PLC
916 Prince Street
Alexandria, VA 22314
(888) 886-4127
contact@medvinlaw.com