UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-233 (CJN) |
| | : | |
| WILLIAM ROBERT NORWOOD, III, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response in Opposition to Defendant Robert William Norwood, III's ("Norwood") Motion to Modify Conditions of Pretrial Release. ECF No. 67. The government opposes the proposed modification.

**I.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

The Government incorporates the factual background provided in its response to the defendant's previous motion to modify conditions of release.  ECF No. 62. As described in greater detail in that filing, the defendant, the Defendant entered the Capitol via the Senate Wing Door of the U.S. Capitol Building on January 6, 2021, at approximately 2:23 p.m. – just ten minutes after rioters violently shattered the windows next to the door with stolen police riot shields and weapons. ECF No. 30 at 2. After entering the Senate Wing door, recorded a video of himself shouting "[w]ell we're in this bitch now. What now! This is our house . . . Where you at, Nancy?" He then led others through Speaker Pelosi's office suite.

The Defendant later walked through the Rotunda and toward the East Rotunda doors. The East Rotunda doors were being guarded from the inside by at least three U.S. Capitol Police ("USCP") officers, including one officer clad in black riot gear. Norwood went to the front of the

1

line of rioters gathered at the East Rotunda doors and began banging on the doors. Norwood, together with the rioters behind him, eventually pushed open the doors, which allowed hundreds of rioters to stream into the U.S. Capitol Building from the outside. *Id.* at 5.

After breaching the East Rotunda doors, rather than exit the building the Defendant continued wandering through the Capitol Building. He recorded a one-minute video of uniformed Metropolitan Police Department officers stationed inside the Rotunda. In this video, the Defendant can be heard saying, "Oh these assholes, trying to push us out . . . Should we take our house back? Our house. Y'all are a bunch of pussies. It's about to go down bro." The Defendant then turned the camera on himself and said, "It's about to go down. Cause I'm gonna go [unintelligible] guns or their asps and attack these motherf***ers later. No f***ing around, no no." *Id,* at 6.

The Defendant eventually exited the U.S. Capitol Building through the East Rotunda doors at approximately 2:59 p.m. After exiting the building, the Defendant stole a USCP helmet and plate carrier from a bin outside the building. W

On July 28, 2021, a federal grand jury sitting in the District of Columbia returned a seven count Superseding Indictment stemming from defendant Norwood's involvement in the insurrection at the United States Capitol on January 6, 2021, and charging him with: (1) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) & 2; (2) Theft of Government Property, in violation of 18 U.S.C. § 641; (3) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C); (6) Disorderly Conduct in a Capitol Building, in violation of 40

U.S.C. § 5104(e)(2)(D); and (7) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 20.

Following his arrest, the Defendant had been released and placed on the high intensity supervision program, under home detention, which permitted him to leave his residence for "employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations…." as well as to "go to the gym and have visitation with his minor child." ECF 16 at 2. It also included an express condition specifically prohibiting the defendant from having any contact with his estranged wife. *Id*. The Defendant's bond conditions also advised him that: "It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation, tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court." *Id*. at 3. As detailed previously in the Government's Motion to Revoke Defendant's Pretrial Release, the Defendant's estranged wife came forward with evidence that he had been engaged in repeated email communication with she felt were coercive and which concerned her enough to reach out to his defense attorney at the time.  ECF No. 30 at 10-11. The estranged wife's communications with Norwood and with Norwood's counsel show that the defendant had, at the very least, been pressuring his estranged wife to recant her statements to the FBI, to not be truthful, and to "keep [her] mouth shut." ECF No. 29, Att. 3. In fact, when the estranged wife texted the Defendant, "I will tell the whole truth," the defendant responded, "No you won't . . . You'll tell them you reached out to me and made the offer. That I didn't respond to you . . . Do not throw me under the bus . . . What part of spousal privilege don't you get???" ECF No. 29, Att. A. Additionally, when the estranged wife texted the Defendant, "I refuse to write another

3

bogus f***ing email," the Defendant responded, "It's not bogus, and it will help us both. . . . Do what you said you already did. You lied to me. STOP F***ING LYING ABOUT EVERYTHING AND HELP ME LIKE YOU SAID YOU WOULD." *Id.* (emphasis in original)

Based upon the information provided to the Court, the Defendant was again arrested, and his pretrial release was revoked. ECF Nos. 29, 30, 41. The Defendant was detained on March 10, 2022. ECF No. 41 On December 15, 2022, previous counsel for the Defendant filed a motion to reconsider pretrial detention, ECF No. 50, which the government opposed. ECF No. 51. This Court granted the motion on January 4, 2023, ECF No. 51, and released the defendant under the high intensity supervision program, finding that a condition of home incarceration was appropriate. ECF No. 52. On April 21, 2023, the Defendant filed a motion modify conditions of release, ECF No. 57, which the government opposed, ECF No. 62. This Court granted in part and denied in part, this motion on May 5, 2023. ECF No. 63.  The Court modified the Defendant's supervision to restrict him to his residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by the pretrial services office or supervising officer; and prohibited him from phone and internet use except for purposes relating to work or education, for court appearances, or to communicate with his attorney and the Supervision Office. The Court further modified the Defendant's conditions of release on June 21, 2023, allowing the Defendant to visit with his grandmother once every two weeks and allowing him to visit his daughter once per week. ECF No. 65.

The Defendant now requests, in his current motion, to be removed from the Home Incarceration program and instead to be placed on the less restrictive Curfew program. ECF No. 67. The Government opposes this request.

## II.      ARGUMENT

The Defendant has filed the instant motion requesting the Court to modify the terms of his pretrial release for the third time in third time in four months. Further, citing little other than his compliance with the existing conditions, the Defendant provides little justification for another modification of his release conditions.

Although this Court is authorized to modify the conditions of release under Title 18 U.S.C. § 3142, it should not do so for this Defendant. At the time this Court ordered the Defendant released from pretrial detention, it felt that the conditions it imposed on the Defendant's supervision, including home incarceration, were appropriate given the circumstances and given the Defendant's past troubling conduct on less restrictive supervision. Under the earlier, less stringent pretrial supervision conditions (home confinement as opposed to home incarceration) he repeatedly violated this restriction. After being detained in March of 2022 he was released again in January of 2023, this time again on high intensity supervision but under home incarceration. Subject to this more restrictive supervision the Defendant has remained in compliance. From his own history of non-compliance in this case it is apparent that high intensity supervision with home incarceration is the least restrictive condition the Court can impose to "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1).

While the Defendant's current compliance with existing conditions merits acknowledgment, it does not erase the countervailing fact that his previous significant non-compliance in this very case resulted in his remand to custody.  The current conditions of release

set for the Defendant provide assurance for the court and incentive for the Defendant to remain in compliance and do not impose any articulated undue burden on him.

III. **CONCLUSION**

For these reasons articulated above, the Government respectfully requests that the Court deny the Defendant's motion to again modify the conditions of his pretrial release, and that the Defendant remain on high intensity supervision with home incarceration with the existing modifications previously ordered by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *Joseph S. Smith, Jr.*
JOSEPH S. SMITH, JR.
Assistant United States Attorney
CA Bar No. 200108
601 D Street, N.W.
Washington, D.C. 20001
(619) 546-8299
Joseph.s.smith@usdoj.gov