## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-233 (CJN)** |
| **v.** | : | |
| | : | |
| **WILLIAM ROBERT NORWOOD, III,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE SECOND
### SUPERSEDING INDICTMENT

William Norwood was initially charged with one count of obstruction of an official proceeding, one count of theft of government property, and five misdemeanors associated with his trespass on, and conduct in, the U.S. Capitol Building on January 6, 2021. *See* ECF 8 (Indictment) and ECF 20 (Superseding Indictment). As the government began marshalling its evidence and preparing for trial in earnest, it determined that it could prove beyond a reasonable doubt that Norwood had obstructed, impeded, and interfered with law enforcement officers at the Capitol on January 6, in violation of 18 U.S.C. § 231(a)(3).

The government then superseded with a new charge, Count One of the Second Superseding Indictment, as it has in many cases in a similar posture. *See, e.g.,* Superseding Indictment, *United States v. Barnett,* 21-cr-38 (CRC), ECF No. 96 (superseding indictment adding felony charge brought less than three weeks before trial); Third Superseding Indictment, *United States v. Miller,* 21-cr-119 (CJN), ECF No. 111 (same, just over one month before trial)*;* Second Superseding *United States v. Irwin,* 21-cr-589 (RDM), ECF No. 48 (same, 15 days before trial). This sequence of events, where the government files charges after a defendant exercises his right to go to trial, is both legal and unremarkable, as the Supreme Court recognized in *United States v. Goodwin,* 457

U.S. 368, 382 n.15 (1982), a decision that squarely forecloses Norwood's vindictive-prosecution claim.

Norwood's motion also fails because his only evidence of alleged vindictiveness is that Count One of the Second Superseding Indictment "is being used as a vindictive penalty in retaliation for [Norwood] participating in the *Fischer* case through his Amicus briefs." ECF 91 at 3. Under *Goodwin,* that is insufficient to establish vindictive prosecution—filing an amicus brief in appellate litigation is not the "exercise of a protected legal right" for the purposes of this analysis. Moreover, other judges of this Court have rejected similar vindictive-prosecution allegations advanced by defendants charged with criminal offenses stemming from their conduct on January 6, 2021. *See, e.g.*, *United States v. Alberts¸* No. 1:21-cr-26, ECF No. 77, (CRC); *United States v. Brock*, No. 1:21-cr-140, ECF No. 57 (JDB.); *United States v. Rhodes*, No. 1:22-cr-15, ECF No., 238 (APM); *United States v. Judd*, No. 1:21-cr-40, ECF No. 203 (TNM)); *United States v. Miller*, No. 1:21-cr-119, ECF No. 67 (CJN.). The same outcome is warranted here.

Presenting neither objective evidence showing actual vindictiveness nor evidence suggesting a realistic likelihood thereof that would lead to a presumption of vindictiveness, Norwood fails to make out even the *prima facie* case required to shift the burden to the government to produce evidence of a lawful motivation for the charges. *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). Even were the Court to disagree, the government can point to multiple facts in the record that would readily satisfy that "admittedly minimal" burden, including the strong evidence of Norwood's participation in a civil disorder on January 6, 2021. *United States v. Meadows*, 867 F.3d 1305, 1312 (D.C. Cir. 2017) (citation omitted). This is not a vindictive prosecution; it is a well-founded one.

Norwood's other purported grounds for dismissal of Count One of the Second Superseding Indictment, "Improper Gamesmanship" and "Lack of Specificity," are similarly unavailing and fall well short of establishing an entitlement to dismissal of the civil disorder charge. Accordingly, the Court should deny Norwood's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Norwood's Criminal Conduct

On January 6, 2021, Norwood attended the "Stop the Steal" rally at the Ellipse before marching to the Capitol. After making his way to the Capitol grounds, Norwood breached the clearly marked secure perimeter around the outside of the Capitol building and ultimately entered the Capitol building itself. While inside the Capitol building, Norwood entered various rooms and offices inside the Speaker's suite, recorded himself making taunting and threatening statements (e.g., "where you at Nancy" and "[W]e in this bitch now! What now? It's our house!"). Norwood also stepped out onto the Speaker's balcony and recorded himself taunting the law enforcement officers defending the west front of the Capitol (e.g., "Go home police! Bye...you bitches!"). Norwood then made his way to the Rotunda, which is the heart of the Capitol building. After spending time in the Rotunda, at around 2:36 p.m. Norwood pushed his way through a crowd of other rioters and approached the East Rotunda Doors.

As Norwood approached the East Rotunda Doors, three U.S. Capitol Police (USCP) officers guarding and securing the door told him that the door would remain closed and that he would not be allowed to open the door. Despite this warning, Norwood pushed his way up to the East Rotunda Doors, leaned over two of the USCP officers securing the doors, and began pushing the doors and hitting them with his hands. Norwood was joined by other rioters in his efforts to open to the East Rotunda Doors. In fact, both USCP CCTV footage and open-source video show Norwood—as he was leaning over the two USCP officers to reach the East Rotunda Doors—turn

to the rioters behind him and say something. Immediately thereafter, the crowd of rioters surged forward and the East Rotunda Doors were breached. USCP CCTV footage shows that Norwood was the tip of the spear that pushed past USCP officers and breached the East Rotunda Doors at around 2:40 p.m. After the doors were breached, dozens, if not hundreds, of rioters poured into the Capitol building.

Immediately after participating in the breach of the East Rotunda Doors, Norwood returned to the Rotunda and filmed himself taunting and threatening law enforcement officers that were attempting to secure the building. Among other things, Norwood said, "Should we leave…or should we take our house back? It's about to go down, bro." While in the Rotunda after breaching the East Rotunda Doors, Norwood also recorded himself in front of a line of law enforcement officers saying he was going to take "their guns and their asps and gonna attack these motherfuckers with it." Eventually, Norwood left the Capitol building. However, before leaving the Capitol grounds, Norwood stole a USCP helmet and body armor vest.

In connection with his actions on January 6, 2021, Norwood was arrested on February 25, 2021, and charged with six charges via a criminal complaint. *See* ECF 1. On March 19, 2021, Norwood was indicted by a federal grand jury on seven charges: Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); Theft of Government Property, in violation of 18 U.S.C. § 641 (Count Two); two counts relating to entering and remaining in a restricted building or grounds and disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) and (2) (Counts Three and Four); and three counts relating to trespassing and disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(C), (D) and (G) (Counts Five, Six, and Seven). *See* ECF 8.

On July 28, 2021, Norwood was indicted on a superseding indictment on precisely the same charges, with the exception that the Theft of Government Property charge (Count Two) was charged as a misdemeanor rather than a felony.[1] ECF No. 29.

On December 19, 2023, this Court convened a status conference in this matter and set a trial date of August 26, 2024. This Court also requested proposed trial schedules from the parties. ECF Minute Entry dated December 19, 2023. On January 23, 2024, this Court issued a trial scheduling order. ECF 75. On February 5, 2024, Norwood filed a notice related to his filing of an *amicus curiae* brief in the *Fischer v. United States* litigation then pending before the U.S. Supreme Court. ECF 76. Exactly four months later, on June 5, 2024, and in anticipation of the upcoming trial of this matter, the government added a second attorney to the case. ECF 77.

## II.   Trial Preparation and the Second Superseding Indictment

In conjunction with adding a second attorney to this matter on June 5, 2024, the government began active trial preparation. This trial preparation involved reviewing all of the government's planned and potential trial exhibits, as well as meeting with potential government witnesses. It was during this period of intensive trial preparation that the government determined that it had the necessary evidence to prove, beyond a reasonable doubt, that Norwood had obstructed, impeded, and interfered with law enforcement officers at the Capitol on January 6, in violation of 18 U.S.C. § 231(a)(3).

As alluded to in Norwood's underlying motion, following the U.S. Supreme Court's decision in *Fischer*[2] , the parties to this matter met and conferred about how best to proceed in

---

[1] After indicting Norwood for theft of government property, the government received a revised estimate of the value of the stolen USCP equipment, which did not meet the statutory threshold for a felony under 18 U.S.C. § 641. As a result of this revised valuation, the government sought the superseding indictment and a reduction of the theft of government property charge from a felony to a misdemeanor.

[2] *Fischer v. United States*, 144 S. Ct. 2176 (2024).

light of the approaching trial date. Although he ultimately opposed a continuance, Norwood initially suggested that the parties jointly ask this Court for a continuance of the trial to allow the parties to assess the impact of *Fischer* on this prosecution. In the context of those discussions, on July 2, 2024 (less than a month after the government had begun trial preparation and two business days after the release of the *Fischer* decision) the government informed Norwood that "we are still assessing the impact of *Fischer* on this case as well as the viability of other possible charges." On July 5, 2024, the government moved this Court to continue the trial and convert the August 26, 2024 trial date to a status conference. ECF 79. In that motion, the government noted that it was requesting a continuance to allow for more time in the event, among other things, that a grand jury returned a second superseding indictment. *Id*. at 3.

On July 25, 2024, a federal grand jury returned the second superseding indictment in this matter. ECF 88. While Counts Two through Seven remained identical to the predecessor indictments, Count One now charges Norwood with a violation of 18 U.S.C. § 231(a)(3). The government reached out to Norwood's counsel within three hours of the second superseding indictment being handed down by the grand jury to provide notice of the new civil disorder charge and the absence of the obstruction charge. The following afternoon (July 26, 2024), the government provided Norwood's counsel with a copy of the second superseding indictment, as well as transcripts from the prior two grand jury presentations in this matter.[3] The government also reiterated its standing offer to engage in plea negotiations (now in light of the second superseding indictment). Norwood's counsel did not respond to the government's email, and instead filed the underlying motion after 11:00 p.m. on Friday, July 26, 2024.[4]

---

[3] The government has not received the transcript of the second superseding indictment grand jury presentation but will provide same to Norwood's counsel as soon as it is available.

[4] The government notes here that this Court's *Revised Scheduling Order*, issued July 18, 2024, reads in pertinent part (the first entry in the Order): "Before filing any motion, the Parties shall

**ARGUMENT**

**I.**    **Defendant Has Not Established Vindictive Prosecution**

The standard for a motion to dismiss for vindictive prosecution is high, and Norwood does not make out even a *prima facie* case. The law is settled that the government is not beholden to its initial charging decision; nor does Norwood's filing of an *amicus* brief in another litigation—to which he was not a party—function as an exercise of a "legally protected right" for the purposes of establishing vindictive prosecution. See *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011). As the government prepares for trial and the evidence crystallizes, it is well within its rights to revisit its charging decision and determine whether additional charges were warranted. Here, the additional count clearly was.

Even were Norwood to establish a presumption of vindictiveness, his motion would fail. Numerous objective reasons support the government's decision to indict, including (1) the verdicts in numerous trials on the same charge; (2) additional evidence the government obtained during trial preparation that supported the civil disorder charge; and (3) the strength of the evidence of Norwood's intent. All of these are more than enough to make the "minimal" showing that Norwood was not indicted "solely" to punish him for exercising a legal right. *Meadows*, 867 F.3d at 1312; *Goodwin*, 457 U.S. at 380 n.11.

**A.  Legal Standard**

"Prosecutorial vindictiveness' is a term of art with a precise and limited meaning." *Meyer*, 810 F.2d at 1245 (citing *Goodwin*, 457 U.S. at 372). The doctrine "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a

---

meet and confer to discuss whether any issues presented by the motion can be resolved by agreement of the Parties." Despite writing to Norwood's counsel on July 25th and July 26th, the government has not received any substantive communication regarding the underlying motion—beyond the filing of the motion.

defendant during a criminal prosecution" *Safavian* at 692. It is traditionally seen in cases in which the prosecution adds additional charges after the defendant successfully appeals. *Id.*

Prosecutors have "broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *Slatten*, 865 F.3d at 799 (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). To succeed on a claim of vindictive prosecution, a defendant must show "that the increased charge was 'brought *solely* to "penalize" [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Id.* (quoting *Goodwin*, 457 U.S. at 380 n.12) (emphasis in *Slatten*).

There are two ways a defendant may make this showing: "through objective evidence showing actual vindictiveness, or through evidence 'indicat[ing] a "realistic likelihood of vindictiveness,"' which gives rise to a presumption that the government must then attempt to rebut." *Id.* (quoting *Meyer*, 810 F.2d at 1245). "The mere possibility that [a] second indictment was vindictively motivated does not suffice." *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002). If defendant's evidence raises a presumption, the government may then overcome it "with 'objective information in the record justifying the increased sentence [or charges].'" *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001) (quoting *Goodwin*, 457 U.S. at 374). "That burden is 'admittedly minimal -- any objective evidence justifying the prosecutor's actions will suffice.'" *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694)).

"To prove actual vindictiveness requires objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights. Such a showing is normally exceedingly difficult to make.'" *Gary*, 291 F.3d at 34 (quoting *Maddox*, 238 F.3d at 446).

The second route—identifying evidence establishing a "realistic likelihood of vindictiveness"—requires "something more" than an increase in charges that followed the exercise of a defendant's constitutional or statutory rights. *Meadows*, 867 F.3d at 1313; *see also Safavian*,

649 F.3d at 692 ("[A] prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context"). This principle applies even where the evidence supporting the new charge was in the government's possession at the time of the initial indictment. "An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution." *Goodwin*, 457 U.S. at 380.

Even where the government has full knowledge of the facts, it can initially exercise its discretion to bring lesser charges." *Slatten*, 865 F.3d at 800. And, as the Supreme Court has observed, "a prosecutor may…forgo legitimate charges already brought in an effort to save the time and expense of trial." *Goodwin,* 457 U.S. at 380. The converse is likewise true: "a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Id*.

In the pretrial context, prosecutorial vindictiveness claims based on the addition of charges rarely succeed. "A defendant must show that the prosecutor's action was 'more likely than not' attributable to vindictiveness." *Safavian*, 649 F.3d at 692 (quoting *Gary*, 291 F.3d at 34) (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989))). This is a difficult showing to make in a pretrial posture, where "'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381).

Moreover, the "routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *Id.* In addition, "'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to

prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Meadows*, 867 F.3d at 1313 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Thus, in the pretrial context, "there must be something more" than an increase in charges following the exercise of rights "for a presumption to arise." *Id.* (citation omitted).

In *Goodwin,* the Supreme Court addressed a situation where the government initially charged a defendant with misdemeanors and then added a felony charge after the defendant requested a jury trial. *Goodwin*, 457 U.S. at 370. The Court declined to apply a presumption of vindictiveness. It explained, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution *or he simply may come to realize that information possessed by the State has a broader significance.*" *Id.* at 381 (emphasis added).  The Court found that:

> the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83. The Court thus declined to presume vindictiveness simply because the government brought additional or greater charges after the defendant made a pretrial demand for a jury trial. *Id.* at 384.

### B. Norwood's Motion Establishes Neither Actual Vindictiveness Nor a Realistic Likelihood of Vindictive Prosecution

Norwood fails to point to either objective evidence of actual vindictiveness or evidence indicating a realistic likelihood of vindictiveness. Instead, he weaves a tapestry made up entirely of supposition and inuendo, and entirely reliant on the timing of the Second Superseding Indictment and the release of the *Fischer* decision. *See* ECF 91 at 3-5. However, as noted above, the government began trial preparation shortly before the release of the *Fischer* decision, obtained new information that supported the addition of a civil disorder charge in the course of trial preparation, and shortly thereafter put both Norwood and this Court on notice that additional charges were being considered. Moreover, Norwood identifies no direct evidence that the government acted "solely" to punish him for exercising a legal right. *Goodwin*, 457 U.S. at 380 n.11. He therefore cannot establish a presumption of vindictiveness, and his motion must fail.

### C. The Government's Decision to Add A Charge After Developing Additional Evidence in Trial Preparation Does Not Support a Presumption of Vindictiveness

Norwood's theory of vindictive prosecution relies entirely on the timing of the Second Superseding Indictment—that the government brought an additional charge before trial and after the U.S. Supreme Court issued its decision in *Fischer* as punishment for Norwood's filing of an amicus brief in the *Fischer* litigation. ECF 91 at 3-5. However, that is exactly the argument that the Supreme Court rejected in *Goodwin*. *See Goodwin* at 457 U.S. at 382 n.15 (rejecting vindictiveness claim where "the only evidence [the defendant] was able to marshal in support of his allegation of vindictiveness [was] that the additional charge was brought at a point in time after his exercise of a protected legal right"); *see also Meadows*, 867 F.3d at 1312 (affirming district court's finding that no presumption of vindictiveness attached where defendant was indicted on six felony counts after rejecting two plea offers and refusing to cooperate with the government).

In *Goodwin*, the defendant was charged originally with misdemeanors; after he exercised his right to go to trial, he was indicted on felony charges. The observations that led the Supreme Court to reject Goodwin's vindictiveness claim are equally dispositive of Norwood's. As in *Goodwin*, "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.* at 382. Such was the case here. As noted above, in the course of preparing this matter for trial the government obtained new evidence that supported a civil disorder charge and promptly put Norwood and this Court on notice that additional charges were being considered.

*Goodwin* recognized that, early in a case, before extensive trial preparation is complete, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381). It was entirely appropriate for the government to revisit its charging decision as it formed a trial team and the evidence increasingly "crystallized," particularly viewed in light of the government's trial record. In addition, the government identified additional video evidence that strengthened its case. As *Goodwin* observed, "[a]n initial decision should not freeze future conduct."

Recently, Judge Moss rejected a prosecutorial vindictiveness claim based on the filing of additional charges after the defendants elected to go to trial, relying on *Goodwin*. *United States v. Allgood*, 610 F. Supp. 3d 239, (D.D.C. July 7, 2022). In *Allgood*, five days after the defendants exercised their speedy trial rights and the court set a trial date, the government notified defendants of its intent to bring additional charges, including mandatory minimum terms of incarceration. *Id.* At 245. Soon thereafter, the government superseded with additional charges and a provision providing for a twenty-year mandatory minimum sentence. *Id.* Defendants moved to dismiss,

arguing that the government acted vindictively to punish them for asserting their speedy trial rights. *Id.* At 242. They argued that they had established a "realistic likelihood" of vindictiveness based on (1) the timing of the government's decision to supersede, (2) the fact that the government "long knew" the information justifying the additional charges, (3) the lack of a prior warning about the additional charges, and (4) the absence of a nexus to plea negotiations.[5] Judge Moss found defendants' argument "at odds" with *Goodwin,* where the same facts were present, but did not create a presumption of vindictiveness. *Id.* at 251 *See also United States v. Simmons,* No. 18-cr-344 (EGS), 2022 WL 1302888, at *18 (D.D.C. May 2, 2022) (rejecting prosecutorial vindictiveness claim where "there is 'no fact beyond the mere sequence of events to support any presumption of improper motivation.'") (citing *United States v. Mills*, 925 F.2d 455, 463 (D.C. Cir. 1991), *overruled on other grounds by United States v. Mills,* 964 F.2d 1186, 1193 (D.C. Cir. 1992).

The facts here are even less compelling than those Judge Moss found unpersuasive in *Allgood* and which the Supreme Court held did not establish a presumption of vindictiveness in *Goodwin*. In *Goodwin,* the prosecutors added the felony charges approximately six weeks after the defendant exercised his right to a jury trial; in *Allgood,* only five days elapsed between defendants' exercise of their rights and the government notifying them of its intent to supersede. *Goodwin,* 457 U.S. at 371, *Allgood*, 610 F. Supp. 3d 239, 249 (D.D.C. 2022). Here, the government knew that Norwood was filing an *amicus* brief in the *Fischer* litigation on February 5, 2024, pursuant to ECF 76. The Second Superseding Indictment was filed nearly six months later. Thus, to accept the premise of Norwood's theory—that he is being punished for filing an *amicus* brief in *Fischer*—

---

[5] The *Allgood* defendants also made an "actual vindictiveness" argument, based on a supervisor's comments to a defense attorney. *Allgood,* 610 F. Supp. 3d 239. Judge Moss rejected this claim, finding that defendants failed to show that the supervisor's comments were motivated by defendants' assertion of their speedy trial rights. *Id.*

one must accept that the government waited nearly six months to punish Norwood. Moreover, one must accept this purported theory in the face of the government's representation that it obtained additional evidence supporting a civil disorder charge while undertaking trial preparation.

While Norwood points to no directly analogous cases, he does attempt to bolster his theory with the D.C. Circuit's decision in *Meyer*. *Meyer,* however, is readily distinguishable, and its holding was "limited to the precise circumstances of this case." *Id*. at 1248; *see also Meadows*, 867 F.3d at 1314 ("[T]he facts in *Meyer* were unusual."). *Meyer* arose out of the arrest of 200 defendants, each of whom had the chance to pay $50 to resolve his or her charges. *Id.* at 1243. Those who chose to go to trial were charged with an additional crime, as they learned at their arraignments (all of which took place on three days). *Id.* at 1244. Judge Moss recently had "little difficulty concluding that *Meyer* [was] inapposite" in *Allgood,* 610 F. Supp. 3d 239, 249-250 (D.D.C. 2022) and similar reasons distinguish *Meyer* here. For example, here there is no allegation of disparate treatment (*i.e.*, unlike in *Meyer,* Norwood does not and cannot allege that all non-pleading defendants are charged with additional crimes); the government has not offered to drop the felony charge; the case does not involve the "simplicity and clarity of both the facts and law underlying [the] prosecutions" present in *Meyer,* and the felony charge was not added to avoid the "annoyance and expense" of a "potentially drawn out trial"; and the addition of a felony charge against Norwood made a trial more likely. *Meyer,* 810 F.2d at 1246-47. Finally, in *Meyer,* the government "never attempted to rebut the presumption." *Id.* at 1249. Assuming such a presumption exists here, the government does (see *infra*).

**D. Even Had Norwood Established a Presumption of Vindictiveness, He Would Not Prevail**

Even if Norwood had met his burden to establish a presumption of vindictiveness, the government could readily overcome that presumption with "'objective information in the record

justifying the increased sentence [or charges].'" *Maddox*, 238 F.3d at 446 (quoting *Goodwin*, 457 U.S. at 374)." The government could point to multiple developments between the initial charging decision and the Second Superseding Indictment. Primarily, and as noted above, after the Superseding Indictment was filed in this matter—and in the context of trial preparation—the government obtained additional evidence supporting a civil disorder charge.[6] Specifically, the government obtained eyewitness testimony that corroborated the government's video evidence of Norwood's conduct on January 6. These facts are more than enough to satisfy the "minimal" burden on the government, demonstrating that the new charge was not brought "solely" to penalize Norwood. *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694)).

The government's decision, however, need not rest on developments that post-date the original charging decision; the prosecutors also "simply may come to realize that information possessed by the State has a broader significance." *Goodwin,* 457 U.S. at 381. Here, as outlined above, the evidence of Norwood's participation in a civil disorder is compelling. Beyond the substantial video evidence obtained by the government, multiple eyewitnesses to Norwood's conduct in the U.S. Capitol building can corroborate the civil disorder charge. While the former tranche of evidence has been in the government's, and Norwood's, possession for some time, this later tranche of evidence was obtained during the government's preparation of this matter for trial.

This strong evidence of Norwood's efforts to obstruct, interfere with, or impede federal law enforcement officers at the U.S. Capitol building on January 6, which further "crystallized" as

---

[6] Norwood claims in the underlying motion to dismiss that he "defended and protected officers from belligerent protesters" on January 6, 2021. ECF 91 at 3. As detailed above, the government's evidence clearly shows that on multiple occasions on January 6, Norwood was in fact one of the "belligerent protesters" threatening, obstructing, and interfering with law enforcement officers. However, and even if the Court entertains Norwood's claims about defending and protecting officers, neither of the incidents cited to by Norwood negate the substantial evidence supporting Count One of the Second Superseding Indictment, charging Norwood for his participation in the breach of the East Rotunda Doors.

the government prepared for trial, demonstrates that the new charge does not result from Norwood's exercise of a protected legal right, but rather reflects "the prosecutor's normal assessment of the societal interest in prosecution." *Goodwin*, 457 U.S. at 380 n.11 *See, e.g.*, *Meadows*, 867 F.3d at 1315 (observing that "the government's evidence regarding the severity of Meadows' fraudulent conduct—which continued for approximately a year, involved two separate false filing schemes, and resulted in approximately 49 false claims—was sufficient to satisfy this court's admittedly minimal requirement of any objective evidence") (internal quotation marks and citations omitted); *United States v. Johnson*, 171 F.3d 139, 141 (2d Cir. 1999) (bringing weapons charge based on evidence that predated defendant's acquittal on RICO charge "is entirely legitimate, and certainly cannot be considered vindictive.") The government's procurement of an indictment was lawful and appropriate. *See Gary*, 291 F.3d at 34 (government's effort to prevent defendant from "escape[ing] punishment for her criminal conduct" not vindictive).

## II.   <u>The Second Superseding Indictment Provides Sufficient Notice and Specificity</u>

### A.  **Legal Standard**

A defendant may move to dismiss an indictment or count prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B). A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *Id.* Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015). When considering a defendant's motion to dismiss an indictment, the court "is limited to reviewing the face of the indictment." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (quoting *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)) (emphasis in original). "[T]he indictment must be viewed as a whole and the allegations must be

accepted as true at this stage of the proceedings." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011).

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence"

or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246–47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here. Indeed, "[i]f contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *See e.g.*, *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) ("[M]otions for summary judgment are creatures of civil, not criminal trials"); *Yakou*, 428 F.3d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948 at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence).

### B.  The Indictment Does Not Lack Specificity.

Norwood first argues that the indictment generally "fails to notify the defendant of the facts on which the government bases its allegations." ECF 91 at 6. According to Norwood, Count One of the Second Superseding Indictment merely "regurgitates the words of the statute," without precisely identifying the exact acts that Norwood engaged in that violate the statute. *Id.*

Norwood misunderstands the purpose of an indictment and the low bar an indictment must clear to satisfy the Federal Rules of Criminal Procedure and the Constitution. As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), "[a]lthough an indictment must in order to fulfill constitutional requirements apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." *Id.* at

124. Indeed, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). "While detailed allegations might well have been required under common-law pleading rules. . .they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Id.* at 110.

As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)). Norwood has neither argued nor established that his is one of those "rare cases" that warrant "a specific identification of fact" in the indictment.

Applying these principles, courts in this District have upheld the sufficiency of indictments far less specific than Norwood's. For example, in *United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017), the defendants were charged with offenses under 18 U.S.C. § 924(c). The indictments provided only "general detail as to the places where the offenses were committed: namely, Mexico and the United States." *Id.* at 154. As to the "when" of the offenses, the indictments alleged that the offenses had occurred over a two- and nine-year period. *Id.* Finally, the indictments "d[id] not specify a particular weapon that was possessed," or "specify whether the firearms were 'used, carried or brandished'" under the statute. *Id.* Nonetheless, the indictments were sufficient.

Courts in this District have also upheld against specificity challenges indictments that arose out of the January 6, 2021 riot at the U.S. Capitol and were nearly identical to the Second Superseding Indictment in this case. For example, in *United States v. Sargent*, Judge Hogan rejected a similar specificity challenge. No. 21-CR-258, 2022 WL 1124817, at *3 (D.D.C. Apr. 14, 2022). In a careful and deliberate opinion, Judge Hogan concluded that every count was properly alleged because each count stated the elements of the offense and, though the charging language closely mirrored the statute, no further factual allegations were required to provide notice or protect against double jeopardy concerns. *Id.* at *2-*10.

In *United States v. Williams,* Judge Berman Jackson similarly found that language charging a violation of 18 U.S.C. § 231(a)(3) that largely tracked the statute was sufficiently specific. No. 21-CR-618, 2022 WL 2237301, at *8 (D.D.C. June 22, 2022). She observed: "[T]he first paragraph of the indictment comprising Count I sets forth all of the elements of section 231(a)(3) . . .. It thereby enables Williams to prepare a defense and plead that an acquittal or conviction is a bar to future prosecutions." *Id.* Judge Berman Jackson further noted, "There has been extensive discovery in this case, but in the event there is any lingering confusion about the particular facts underlying the charged offense, the remedy would be a request for a bill of particulars, not dismissal." *Id.*

The Section 231(a)(3) charging language that passed muster in *Williams*, *see* No. 21-CR-618, ECF 27 at 1-2 (Count One), is *slightly less* specific than the language in Count One of the Second Superseding Indictment in this matter. Specifically, in *Williams* the indictment did not specify the agency affiliation of the subject officers, while here Norwood was provided notice that the officers he is alleged to have obstructed, impeded, or interfered with were affiliated with the U.S. Capitol Police. *See* ECF 88.

Thus, as in *Sargent* and *Williams*, the Second Superseding Indictment provides sufficient information to fairly inform Norwood of the charge he is facing. Norwood knows the day on which

the alleged crimes occurred: January 6, 2021, which is alleged in all counts. *See* ECF 88. He knows that all charged conduct occurred in this District, from the indictment's allegation. *Id.* Multiple counts specifically refer to conduct on U.S. Capitol grounds, further narrowing the "where" of the charged crimes, and at a time when the Vice President was and would be temporarily visiting. The statutes charged are not so unusually vague that they require allegations beyond the elements of the offenses.

Norwood also provides a list of purported missing elements from the Second Superseding Indictment, complaining that, among other things, the indictment does not specifically detail where the conduct occurred or the "operative actus rea." ECF 91 at 8. But, again, Norwood's "complaint seems to result. . .from a general misunderstanding of the purpose of the indictment and, especially, from an inflated notion of what must be included therein." *Haldeman*, 559 F.2d at 124.  As the D.C. Circuit concisely explained in rejecting an identical argument in *Verrusio*:

> Verrusio contends that Count Two of the indictment failed to allege an official act because it failed to say "how Mr. Verrusio was going to use his position" to help United Rentals. . ... The indictment certainly need not allege precisely how Verrusio contemplated [committing the crime]. Would he do it by himself or ask someone else to do it? Would that someone else be Colonel Mustard or Professor Plum? With a candlestick or a rope, in the library or the study? Answering those questions is not required at the indictment stage.

762 F.3d at 14-15. For that reason, Judge Hogan rejected an argument just like Norwood's in *Sargent*, concluding that the indictment need not allege the specific facts detailing precisely how the government believes the defendant violated the statute. *See* 2022 WL 1124817 at *3, *4, *7, and *10. Instead, as noted above, an allegation of fact beyond the statute's elements is required only if "guilt depends so crucially upon such a specific identification of fact." *Id.* at *10 (quoting *Russell*, 369 U.S. at 764). As noted above, Norwood does not argue, nor has he established, that his case warrants this greater specification of fact in an indictment.

21

Finally, the Court should disregard Norwood's "Improper Gamesmanship" arguments as duplicative of the arguments asserted elsewhere in Norwood's motion, and should dismiss them on the same grounds as, and along with, the "Vindictive Prosecution" and "Lack of Specificity" arguments addressed above.

## CONCLUSION

For the reasons stated above, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
District of Columbia
Bar No. 481052

By:    */s/Joseph S. Smith, Jr*
Joseph S. Smith, Jr.
Assistant United States Attorney
CA Bar No. 200108
United States Attorney's Office
District of Columbia
601 D Street, N.W.
Washington, D.C. 20001
(619) 546-8299
Joseph.s.smith@usdoj.gov

*/s/Benjamin J. Smith*
Benjamin J. Smith
Assistant United States Attorney
N.Y. Bar Number 5220637
United States Attorney's Office
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-304-0977 (c)
202-252-2428 (o)
Benjamin.smith4@usdoj.gov